124 N.J. Super. 263 (1973)
306 A.2d 85
JOHN KULISH, J. ARNOLD WITTE, BURTON BERGMAN, CHARLES S. MANCUSO AND EUGENE ANDRUKITE, INDIVIDUALLY, AND AS MEMBERS OF THE TOWNSHIP COMMITTEE OF HILLSIDE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
THE HILLSIDE POLICEMEN'S BENEVOLENT ASSOCIATION, LOCAL NO. 70, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 11, 1973.
*264 Mr. James C. Welsh for plaintiffs.
Mr. Thomas J. Savage for defendant (Messrs. Dugan, Tucker and Savage, attorneys).
*265 MEHLER, J.S.C.
This action, arising from a labor dispute, involves the question whether public employees not engaged in a strike may peacefully picket or demonstrate at places of employment of members of the governing body both inside and outside of the municipality in which the dispute is pending. The issue appears to be one of first impression in this State.
The matter is before the court on the return day of an order to show cause why an interlocutory injunction should not be issued restraining members of defendant association from parading, patrolling, loitering or picketing about the premises upon which plaintiffs, who are members of the township committee, the governing body of Hillside, may be in the course of their full-time employment.
The essential facts presented by the verified complaint and the affidavits of the parties are as follows:
The township committee and defendant, a voluntary association of police officers, have reached an impasse in their 1973 employment contract negotiations. Although the Public Employment Relations Commission has been notified of the impasse, and notwithstanding there is no strike, defendant's members are picketing plaintiffs' places of employment, all but one of which are located outside of the township.
Defendant, because of its belief that the township committee has failed to live up to previously executed agreements, has determined to undertake what it says are informational demonstrations to bring this matter to the attention of the public through such demonstrations. Admittedly, the demonstrations, as defendant characterizes them, or picketing, as plaintiffs call them  a matter of semantics  have been conducted in front of the places of employment of various plaintiffs in Livingston, Hackensack, Newark and Hillside.
Lines are formed by 5 to 13 off-duty policemen carrying signs bearing such words as "Support Your Police," "Kulish Unfair," "Mancuso Signs In, Welches In," and similar *266 phrases. A merry-go-round technique is employed  that is, the pickets form an oval and march in front of an entrance, maintaining the oval formation with each picket closely following the one in front of him. Each demonstration lasts approximately one hour. Although the picketing has been peaceful, plaintiffs Mancuso and Kulish have expressed the fear that picketing will adversely affect their employment status.
In this State public employees may not strike. Board of Education, Union Beach v. New Jersey Education Assn, 53 N.J. 29, 36 (1968). Peaceful picketing in furtherance of an unlawful purpose is not permissible and will be restrained. Id.; Delaware River and Bay Authority v. International Organization of Masters, Mates & Pilots, 45 N.J. 138, 150 (1965). The case at bar differs from the facts in those cases in that the Hillside police officers are not on strike and the picketing is occurring essentially at locations completely unrelated to the labor dispute. The industry of counsel and research by the court during the week since the order to show cause was issued have produced no case in which the precise question involved has been decided in this State or in fact elsewhere  hence its novelty insofar as the court has been able to ascertain.
Defendant argues that the activity of its members is within the ambit of free speech and not restrainable. While it is well settled that picketing and similar activity may involve elements of First Amendment rights, Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), and that policemen are not "relegated to a watered-down version of constitutional rights," Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562, 567 (1967), the Supreme Court, in International Brotherhood of Teamsters v. Vogt, 354 U.S. 284, 289, 293, 77 S.Ct. 1166, 1168, 1171, 1 L.Ed.2d 1347, 1351, 1353 (1957), reh. den. 354 U.S. 945, 77 S.Ct. 1423, 1 L.Ed.2d 1558 (1957), said that picketing, even though peaceful, *267 involved more than just communication of ideas and is not immune from all state regulation. After reviewing several cases in which the court sanctioned the prohibition of picketing, the court concluded
This series of cases, then, established a broad field in which a State, in enforcing some public policy, whether of its criminal or its civil law, and whether announced by its legislature or its courts, could constitutionally enjoin peaceful picketing aimed at preventing effectuation of that policy.
See also Independent Dairy Workers, etc. v. Milk Drivers, etc., 30 N.J. 173, 183-184 (1959); Delaware River and Bay Authority, supra, 45 N.J. at 150; Board of Education, Union Beach, supra, 53 N.J. at 42.
Peaceful picketing is not unlawful simply because there is no strike. 48 Am. Jur. 2, Labor and Labor Relations, § 1385; A.F.L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855 (1941), reh. den. 312 U.S. 715, 61 S.Ct. 735, 85 L.Ed. 1145. It may be enjoined, however, where the location of the picketing is not in any way related to the labor dispute. Carpenters & Joiners Union v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143 (1942). There the court said:
It is true that by peaceful picketing workingmen communicate their grievances. As a means of communicating the facts of a labor dispute, peaceful picketing may be a phase of the constitutional right of free utterance. But recognition of peaceful picketing as an exercise of free speech does not imply that the states must be without power to confine the sphere of communication to that directly related to the dispute. Restriction of picketing to the area of the industry within which a labor dispute arises leaves open to the disputants other traditional modes of communication. To deny to the states the power to draw this line is to write into the Constitution the notion that every instance of peaceful picketing  anywhere and under any circumstances  is necessarily a phase of the controversy which provoked the picketing. Such a view of the Due Process Clause would compel the states to allow the disputants in a particular industrial episode to conscript neutrals having no relation to either the dispute or the industry in which it arose. [315 U.S. at 727, 728, 62 S.Ct. at 810]
*268 In Vogt, supra, the court summarized the holding in Ritter by saying (354 U.S. at 290, 77 S.Ct. at 1169, 1 L.Ed.2d at 1351), that "The Court held that Texas could, consistent with the Fourteenth Amendment, insulate from the dispute a neutral establishment that industrially had no connection with it. This type of picketing certainly involved little, if any, `communication'".
The court's statement also summarizes the situation in this case, for although defendant alleges that its purpose is to communicate its grievances to the public, almost all of the picketing is occurring at locations outside of the township where defendant's message is not likely to reach voters and taxpayers of the township.
An affidavit submitted by defendant states that police officers appeared at the place of employment of plaintiff Witte in Staten Island, New York, to demonstrate, but no demonstration took place when it was learned he was not at work. Picketing in front of businesses which have no relationship to defendant's dispute with the township committee, and particularly in outside municipalities, entails a substantial risk of potential harm to totally neutral third persons, that is, plaintiffs' employers and their customers.
Citizens have the right to coerce a public body to their wish by denouncing the body and its officers, but they have no right to achieve that end by disabling the public body from acting at all. Board of Education, Union Beach, supra, 53 N.J. at 40.
I conclude that the likely purpose and effect of the picketing is to coerce plaintiffs into acceding to defendant's demands not through legitimate public pressure but through fear of losing their jobs. Plaintiffs are faced with the dilemma of losing their jobs, resigning their positions as township committeemen, or complying with the wishes of defendant even though such compliance is not in accordance with their best judgment. This dilemma is produced by what I conceive to be illegitimate pressure. Such pressure and coercion by public employees cannot be permitted.
*269 Defendant will accordingly be enjoined, pending final hearing and the further order of the court, from demonstrating, parading and picketing about the premises upon which plaintiffs are employed.