251 N.J. Super. 107 (1991)
597 A.2d 540
K-T MARINE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DOCKBUILDERS LOCAL UNION 1456 OF NY AND NJ, OR OTHER PERSONS ACTING IN CONCERT WITH OR OTHERWISE PARTICIPATING IN AND AIDING THE DOCKBUILDERS LOCAL UNION 1456 OF NY AND NJ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 28, 1991.
Decided July 3, 1991.
*108 Before Judges J.H. COLEMAN and DREIER.
Parsekian & Solomon, attorneys for appellant (Melvin R. Solomon and Beatriz E. Gallego, on the brief).
McCarthy & Schatzman, attorneys for respondent (Michael A. Spero, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant, Dockbuilders Local Union 1456 of New York and New Jersey, appeals from an order of Judge McGann enjoining the Union's picketing of the private residence of plaintiff's president and principal stockholder. 251 N.J. Super. 153, 597 A.2d 563.
Plaintiff, K.T. Marine, Inc., is a marine construction company having offices in Perth Amboy and employing non-union workers. It had been awarded a public contract to repair and construct 70 feet of steel bulkhead for a County bridge in Sea Bright. The contract required that plaintiff pay its employees *109 prevailing rates, i.e., area-standard wages and benefits as filed with the New Jersey Department of Labor. There was an anticipated completion date of September 1990.
On May 22, 1990 defendant heard from an unnamed individual that plaintiff was failing to pay the prevailing rates, and, without examining plaintiff's wage records on file with the Department of Labor, the Union began picketing plaintiff's job site in Sea Bright. According to the record, plaintiff was paying prevailing wages, but may not have been paying the full prevailing fringe benefits. After some problem at the job site, plaintiff obtained a temporary restraining order regulating the picketing.
On June 4, 1990, defendant began picketing the home of plaintiff's president, located in Middletown, 30 to 40 miles from plaintiff's job site. The president had visited the job site approximately six times. His wife testified that on June 4, 1990, when her four children were leaving to go to school, 15 men walked down the street carrying signs, and although she did not read their text, she was able to see that the signs contained the names of her husband and the Corporation. Since the picketers did not walk back and forth in front of the property, but milled around the driveway and interfered with pedestrians along the sidewalk, she was twice forced to call the police. When she would back her car from the driveway, the picketers blocked her view of the busy street. The children were frightened, and the president was continually questioned by the children and neighbors why protesters were picketing his house.
The Union president testified that the home was picketed because of the injunction regulating the picketing on the job site, and the purpose of the picketing was to "[l]et the neighbors and the neighborhood know that we [the Union] have a gripe with ... [the] president of K-T Marine."
Judge McGann determined that in the usual case, informational picketing was a matter of constitutional right. While *110 such picketing cannot be enjoined, a court could impose reasonable limitations on its exercise for the public's health and welfare. As to the question whether informational picketing can be established "in a residential area far removed from the job site and in front of the home of a principal of the target corporation," the judge held that it could not. He stated that the purpose of such activity is "not informational; it is simply coercive." The purpose of this picketing was to force the president to make decisions "stemming solely from the apprehensions of his wife and children." Judge McGann was satisfied that tortious activity in the nature of such obstructive conduct had taken place and would continue unless the court interceded. He balanced these rights against the minimal limitations on the exercise of defendant's constitutional rights and enjoined further picketing at the residence.
Judge McGann further determined that the Anti-Injunction Act, N.J.S.A. 2A:15-51 et seq., did not apply to informational picketing in this case because the facts did not give rise to a "labor dispute" as defined in N.J.S.A. 2A:15-58c. The Union's desire to inform the public that plaintiff hired non-union employees and did not pay prevailing rates did not constitute a controversy which could be classified as a labor dispute. The president was not a "person" involved in the labor dispute as defined by the Act. The judge also determined that even if the Anti-Injunction Act were applicable, it would not justify the picketing at the president's residence. The only appropriate place to spread the informational message, other than the job site, would be at plaintiff's office in Perth Amboy.
The judge rejected defendant's argument that the court had no jurisdiction because the subject matter had been preempted by the National Labor Relations Act, 29 U.S.C.A. § 141 et seq., specifically 29 U.S.C.A. § 158 (unfair labor practices). We agree with the trial judge that the State court's jurisdiction is not preempted as noted in Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters, 436 U.S. 180, *111 204, 98 S.Ct. 1745, 1761, 56 L.Ed.2d 209, 229 (1978); a state court may enforce its laws prohibiting trespassing on private property, "violence, defamation, the intentional infliction of emotional distress, or obstruction of access to property." Section 8(b)(7)(C) of the Act (29 U.S.C.A. § 158(b)(7)(C)) recognizes area-standards picketing as a right. But such protection is only one factor in determining whether the Act preempts the application of state law. Sears, Roebuck & Co., 436 U.S. at 187-190, 98 S.Ct. at 1752-54, 56 L.Ed.2d at 219-221. As there noted, preventing a trespass remains within the jurisdiction of state courts. Id. at 207, 98 S.Ct. at 1762, 56 L.Ed.2d at 231-232. Where the conduct is only a peripheral concern of the Act or "touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act." Local 926, Int'l Union of Operating Eng'r, AFL-CIO v. Jones, 460 U.S. 669, 676, 103 S.Ct. 1453, 1459, 75 L.Ed.2d 368, 376 (1983). Thus there is no preemption, and jurisdiction was properly exercised by Judge McGann in this case.
The New Jersey Anti-Injunction Act defines a "labor dispute" as including "any controversy concerning terms or conditions of employment ... regardless of whether or not the disputants stand in the proximate relation of employer and employee." N.J.S.A. 2A:15-58c. Defendant's attempt to inform the public that plaintiff was failing to pay prevailing rates arguably could be said to fall within the term "labor dispute" as so defined. We therefore cannot agree with that portion of Judge McGann's opinion which rejects the applicability of the Anti-Injunction Act. But, since he also made a positive finding that the injunction was warranted even if the act applied, we find no fault with his ultimate conclusions.
Defendant has claimed that plaintiff's complaint did not specifically delineate the problems plaintiff faced concerning the picketing at its president's home, and that such specificity is *112 required by N.J.S.A. 2A:15-55a. This issue was not presented to the trial judge, and it is clear to us that defendant was not prejudiced by plaintiff's failure to delineate the residential picketing as one of the "specific act or acts as may be expressly complained of in the complaint." N.J.S.A. 2A:15-55a. Defendant was able to present its witnesses and arguments, and we see no reason why plaintiff should have been forced to amend its complaint when the residential picketing did not begin until after the filing of the original complaint (in fact, the day before the hearing).
Insofar as the injunction related only to the president's home, far removed from any job site or corporate office, there is no question that the court could constitutionally insulate a neutral dwelling having no connection with the labor controversy. See Carpenters & Joiners Union of America, Local 213 v. Ritter's Cafe, 315 U.S. 722, 723-725, 62 S.Ct. 807, 808-09, 86 L.Ed. 1143, 1145-1146 (1942), reh'g denied, 316 U.S. 708, 62 S.Ct. 1038, 86 L.Ed. 1775 (1942). This limitation does not infringe upon the constitutional right of free speech. Id. at 727-728, 62 S.Ct. at 809-10, 86 L.Ed. at 1147-1148. See also Kulish v. Hillside Policemen's Benevolent Ass'n, Local No. 70, 124 N.J. Super. 263, 268, 306 A.2d 85 (Ch.Div. 1973); cf. Evening Times Printing & Publishing Co. v. American Newspaper Guild, 124 N.J. Eq. 71, 83, 199 A. 598 (E. & A. 1938) (decided prior to the Anti-Injunction Act).
There is a constitutional right of privacy protecting the well-being of the home and the residents' rights not to be a captive audience. See Frisby v. Schultz, 487 U.S. 474, 484-488, 108 S.Ct. 2495, 2501-04, 101 L.Ed.2d 420, 431-434 (1988). Here, the president's home was a considerable distance from the job site. No evidence was presented to show that the president ran the business out of his home, and picketing of the home, even if restricted to business hours, would not have brought the message to the president who was at work during those hours. Although N.J.S.A. 2A:15-51e protects informational picketing *113 involving a labor dispute, the presence of the 15 pickets suggested that the Union's intentions were coercive rather than informational. See Indep. Dairy Workers Union of Hightstown v. Milk Drivers and Dairy Employee's Local No. 680, 30 N.J. 173, 187-189, 152 A.2d 331 (1959).
With the additional explanations given here, and our single disagreement with the trial judge concerning the inapplicability of the Anti-Injunction Act, we affirm the order appealed from, incorporating the reasons stated by Judge McGANN in his comprehensive opinion of June 27, 1990.