Justice Scalia,
concurring.
Last Term’s decision in Madsen v. Women’s Health Center, Inc., 512 U. S. 753 (1994), has damaged the First Amendment more quickly and more severely than I feared. In this case the New Jersey courts asserted the power to enjoin residential picketing *1111 by antiabortion demonstrators that was explicitly found to have been peaceful and in violation of no state statute or rule of common law. It is one thing for the courts to enforce by injunction a general, content-neutral state law (civil or criminal) against all residential picketing, or to enjoin particular individuals from continuing residential picketing that they have conducted in an unlawful manner (e.g., with the accompaniment of violence). It is quite another thing for the courts to enjoin particular individuals from conducting lawful residential picketing that they have conducted in a lawful manner in the past. That is an unconstitutional prior restraint.
Respondents are Elrick Murray, an obstetrician-gynecologist who performs abortions, and his wife. The two petitioners planned a demonstration at respondents’ residence on Sunday, January 20, 1991. On the appointed day, they and 56 other picketers met two policemen near respondents’ house; received instruction from the policemen in basic picketing protocol; and were escorted to the sidewalk running in front of respondents’ house and 10 neighboring houses. The protesters, carrying signs, walked in a single-file loop on the sidewalk past respondents’ house; the picketing lasted about an hour, and “[n]o instances of trespass, violence or disorderly conduct were reported.” App. to Pet. for Cert. 90a (App.).
In February 1991, respondents filed suit against petitioners and others in state court, seeking damages and injunctive relief for various common-law torts: invasion of privacy (including interference with the use and enjoyment of respondents’ residence), intentional infliction of emotional distress, interference with contractual relations, and others. The Chancery Division of the trial court entered a temporary restraining order. After a hearing on the merits, the trial court denied respondents damages on the ground that respondents had not made out any of their tort claims. See id., at 92a-97a. The court then went on to make the following rulings, which converted the proceeding from a tort suit for damages and injunctive relief into a proceeding for imposition of a judicial prior restraint:
“In addition to these claims, this court must also consider equitable principles when determining the appropriateness of injunctive relief.
“Plaintiffs have a privacy interest irrespective of their potential tort claim. . . .
*1112 “It can operate to limit First Amendment rights, even where the intrusion is not tresspatory [sic] or otherwise obstructed.
“The Court of equity has the inherent authority to balance that interest against First Amendment rights.
“In other words, this court does not accept defendants’ position that no injunction can issue unless a crime or an expressed tort has been committed.” Id., at 97a (emphases added; citations omitted).
The court then “balanced” the equities and, on the strength of Frisby v. Schultz, 487 U. S. 474 (1988), found that respondents’ interests in residential privacy justified an injunction restraining “defendants and all persons in active concert or participation with them . . . from picketing in any form . . . within 300 feet” of respondents’ home. App. 106a.
The Appellate Division and the New Jersey Supreme Court affirmed. When petitioners sought certiorari we granted their petition, vacated the judgment, and remanded for reconsideration in light of our decision in Madsen. See Lawson v. Murray, 513 U. S. 802 (1994). On remand, the New Jersey Supreme Court affirmed the trial court’s injunction in part and modified it in part. The court acknowledged (as it had stated even more clearly in its first opinion) that the injunction was “not imposed to remedy unlawful conduct,” 138 N. J. 206, 225, 649 A. 2d 1253, 1263 (1994), but rejected petitioners’ claim that the injunction therefore constituted an invalid prior restraint. In the alternative, the court relied on an asserted “captive audience” exception to the prior restraint doctrine. See id., at 226, 649 A. 2d, at 1263.
Although I dissented in Madsen, I do not believe that the opinion for the Court in that case “approve[d] issuance of an injunction against speech . . . even when there has been found no violation, or threatened violation, of a law.” 512 U. S., at 804 (Scalia, J., dissenting) (emphasis in original). To the contrary, the Court did obeisance to the venerable principle that “[injunctions . . . are remedies imposed for violations (or threatened violations) of a legislative or judicial decree,” id., at 764 (citing United States v. W. T. Grant Co., 345 U. S. 629 (1953)), no matter how little that principle was honored in application. See also 512 U. S., at 765 (“[Injunctions .. . afford more precise relief than a statute where a violation of the law has already occurred”); id., at 765, n. 3 *1113 (“Under general equity principles, an injunction issues only if there is a showing that the defendant has violated, or imminently will violate, some provision of statutory or common law, and that there is a cognizable danger of recurrent violation”) (internal quotation marks omitted).
The Federal Constitution does not, of course, directly require that an injunction issue only in such circumstances. But where injunctions that prohibit speech are concerned, the Free Speech and Free Press Clauses of the First Amendment impose that requirement indirectly. All speech-restricting injunctions are prior restraints in the literal sense of “ ‘administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.’ ” Alexander v. United States, 509 U. S. 544, 550 (1993) (emphasis deleted). Precedent shows that a speech-restricting “injunction” that is not issued as a remedy for an adjudicated or impending violation of law is also a prior restraint in the condemnatory sense, that is, a prior restraint of the sort prohibited by the First Amendment.
In Organization for a Better Austin v. Keefe, 402 U. S. 415 (1971), the state courts enjoined the petitioner from distributing literature or picketing anywhere within the city limits, on the same ground that the New Jersey courts expressed here: “[T]he public policy of the [State] strongly favored protection of the privacy of home and family” from the speech activities. Cf. 138 N. J., at 224, 649 A. 2d, at 1263 (“[T]he injunction was entered pursuant to the [trial] court’s authority to grant equitable relief to enforce a valid public policy of this State” protecting residential privacy). We held the injunction to be an unconstitutional prior restraint, reasoning that “the injunction operates, not to redress alleged private wrongs, but to suppress [speech] on the basis of previous publications.” 402 U. S., at 418-419 (emphasis added). Keefe relied on Near v. Minnesota ex rel. Olson, 283 U. S. 697 (1931), the foundation case in this area, where we struck down a state-court order that enjoined a newspaper from publishing malicious, scandalous, or defamatory material. We found the order to be an unconstitutional prior restraint, observing that the statute that authorized the order “is not aimed at the redress of individual or private wrongs,” id., at 709, and that “the object of the statute is not punishment, . . . but suppression,” id., at 711. See also id., at 715; Hirsh v. Atlanta, 495 U. S. 927 (1990) (Stevens, J., concurring in denial of stay) (distinguishing injunc- *1114 tive relief against “a class of persons who have persistently and repeatedly engaged in unlawful conduct” from “a naked prior restraint against ... a group that did not have a similar history of illegal conduct”).
The very episode before us illustrates the reasons for this distinction between remedial injunctions and unconstitutional prior restraints. The danger that speech-restricting injunctions may serve as a powerful means to suppress disfavored views is obvious enough even when they are based on a completed or impending violation of law. Once such a basis has been found, later speech may be quashed, or not quashed, in the discretion of a single official, who necessarily knows the content and viewpoint of the speech subject to the injunction; the injunction is enforceable through civil contempt, a summary process without the constitutional protection of a jury trial; and the only defense available to the enjoined party is factual compliance with the injunction, not unconstitutionality, see In re Felmeister, 95 N. J. 431, 445, 471 A. 2d 775, 782 (1984); In re Carton, 48 N. J. 9, 16, 222 A. 2d 92, 96 (1966). But the threat to the First Amendment becomes positively alarming when violation of the law is not even a necessary prelude to this expansive discretion — when the defendant’s prior speech (and proposed future speech) has been expressly found not to constitute a crime or common-law tort, and the only basis for the injunction is a nebulous “public policy” of the State enforced by an inherent equitable power. See 138 N. J., at 225, 649 A. 2d, at 1263. This is by definition a policy of enjoining in advance speech that the State does not punish after the fact— that is to say, a policy narrowly tailored to nothing but the suppression of lawful speech. And even that damning assessment assumes, of course, that such a “public policy” even exists in state law, which is highly questionable here. The New Jersey courts have given equitable relief against residential picketing npt viola-tive of state law only in this case and another recent casé involving abortion protesters. See Boffard v. Barnes, 136 N. J. 32, 642 A. 2d 338 (1994).* The temptation in cases involving issues of *1115 social controversy — precisely the cases where the First Amendment’s protections are most needed — will always be for judges to discern a “policy” against whatever-speech-looks-bad-at-the-moment.
Even our Madsen decision was, as I read it, unwilling to invite such consequences by cutting prior-restraint doctrine loose from the requirement that injunctions be remedial. The prior-restraint argument advanced by petitioners in that case was summarily rejected in a footnote with the observation that
“[n]ot all injunctions that may incidentally affect expression ... are ‘prior restraints’ .... Here petitioners are not prevented from expressing their message in any one of several different ways; they are simply prohibited from expressing it within the . . . zone [covered by the injunction]. Moreover, the injunction was issued not because of the content of petitioners’ expression, . . . but because of their prior unlawful conduct.” Madsen, 512 U. S., at 764, n. 2 (emphasis added).
The New Jersey Supreme Court read this footnote to mean that even an injunction not imposed to remedy or prevent unlawful conduct may nonetheless be valid, depending on an assessment of “factors” such as content neutrality and availability of alternative channels of communication. See 188 N. J., at 221-226, 649 A. 2d, at 1261-1263. But such factors determine the validity of subsequent restraints, see, e. g., Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd., 502 U. S. 105, 116 (1991); Ward v. Rock Against Racism, 491 U. S. 781, 791 (1989), and to make them conclusive of the validity of prior restraints as well would destroy the doctrine that prior restraints are specially disfavored, see Patterson v. Colorado ex rel. Attorney General of Colo., 205 U. S. 454, 462 (1907) (Holmes, J.); Nebraska Press Assn. v. Stuart, 427 U. S. 539, 598 (1976) (Brennan, J., concurring in judgment). The presence of such validating factors is a necessary and sufficient condition for the constitutionality of a subsequent punishment, but merely a necessary condition for the constitutionality of a prior restraint, which requires in addition that it be remedial. It is improper to attribute a different meaning to the ambiguous Madsen footnote, which after all appeared in an opinion that elsewhere purported to honor the requirement that speech-restricting injunctions be remedial.
*1116 The principal ground for the decision below, then, does not apply Madsen but expands it, and contracts the First Amendment pari passu. I think i,t of vital importance that Madsen quickly be limited to what it said, rather than what it did. I nonetheless do not vote to grant certiorari here, for two reasons: The alternative ground for the court’s decision (existence of a “captive audience” exception to the doctrine of prior restraint), while a highly questionable basis for a discretionary injunction power, presents no clear conflict with the decisions of other courts and could prevent us from reaching the Madsen issue. And clarification of Madsen is in any event unlikely to occur in another case involving the currently disfavored class of antiabortion protesters. Accordingly, I concur in the denial of certiorari.

 In K-T Marine, Inc. v. Dockbuilders Local Union 1456, 251 N. J. Super. 107, 597 A. 2d 540 (1991), the Appellate Division affirmed an injunction against residential picketing by a union. There, however, the injunction issued because the trial judge found that “tortious activity . . . had taken place and would continue unless the court interceded.” Id., at 110, 597 A. 2d, at 542.