WALLER, Chief Justice, for the Court:
¶ 1. After being separated from her newborn infant for more than a year, Cirila Baltazar Cruz received an award of full legal and physical custody of her child from the Youth Court of Jackson County. The youth court further ordered that its proceedings and records remain confidential and that those present at the final hearing refrain from speaking to the media about the case. We find that the youth court did not abuse its discretion in ordering that the youth-court records remain confidential; however, the youth court failed to apply the proper legal standard when it issued the gag order. Therefore, we affirm in part and reverse and render in part.
FACTS
¶ 2. Cirila Baltazar Cruz is from Oaxaca, Mexico. Her native language is Chatino. The Chatino language predates European arrival in the New World and is spoken by less than 40,000 people in the world. Other than Chatino, Cruz speaks a very limited amount of Spanish and almost no English.
¶ 3. On November 16, 2008, Cruz gave birth to Baby Doe[1] at Singing River Hospital in Pascagoula, Mississippi. During her hospital stay, Cruz tried to communicate with medical personnel through a Spanish interpreter. The interpreter understood Cruz to have said several alarming things. She purportedly said that her husband had abandoned her; that she was living with an Asian woman and the Asian woman’s sixteen-year-old daughter; that she was having sex in exchange for rent; and that she might put her newborn child up for adoption. Cruz’s statements, it turned out, had been misinterpreted. Nevertheless, based on this information, the hospital contacted the Jackson County Department of Human Services (JCDHS).
¶ 4. A JCDHS social worker and an interpreter contacted Cruz at the hospital. During their interview with her, they understood Cruz to reiterate what she had told hospital personnel. Following this interview, the JCDHS social worker filed a minor’s complaint report. On November 18, 2008, the Youth Court of Jackson County ordered that Baby Doe be taken into the custody of JCDHS.
¶ 5. Cruz did not regain physical custody of Baby Doe until one year later, on November 19, 2009. She did not receive full legal and physical custody until March 5, 2010.
¶ 6. At the final hearing, the youth court stated that it wanted its final order to reflect that the proceedings were to remain confidential. The court added that it did not want anyone present at the hear *339 ing to talk to the press about the matter. Cruz, at that point, reserved her objection to any continuation of confidentiality.
¶ 7. Weeks later, on March 23, 2010, the youth court entered an order of confidentiality. The order stated, in pertinent part, that:
ON THIS THE 19th DAY OF February, 2010 THIS MATTER comes before the Court Ex mero motu and the Court finds that [Baby Doe] is under the jurisdiction of this Court and that venue is proper; and further upon considering the nature of the proceedings, the welfare, safety and best interest of [Baby Doe], that there is no legitimate interest in allowing public access to these proceedings and that this Youth Court ease and all proceedings heard herein shall remain confidential pursuant to U.R.Y.C.P. 5(b) and Miss.Code Ann. 43-21-261, and further this Court Orders that no one in the hearing this date shall disclose information concerning this case to the Media.
Cruz responded by filing a motion to alter or amend the judgment under Rule 59(e) of the Mississippi Rules of Civil Procedure. She requested that the order of confidentiality be set aside: She wanted to be able to discuss the case publicly and to share documents and transcripts from the proceedings. The youth court denied her motion. The court said that none of the parties had objected to the confidentiality order and found that it was not in Baby Doe’s best interest to set aside that order absent some reason under Section 43-21-261 of the Mississippi Code.
¶ 8. Cruz now requests that this Court vacate the confidentiality order.
DISCUSSION
¶9. To succeed on a Rule 59(e) motion, the movant must show: “(i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice.” Brooks v. Roberts, 882 So.2d 229, 233 (Miss.2004) (citing Bang v. Pittman, 749 So.2d 47, 52-53 (Miss.1999), overruled on other grounds by Cross Creek Prod. v. Scafidi, 911 So.2d 958, 960 (Miss.2005)). A trial court’s denial of a Rule 59(e) motion is reviewed under an abuse-of-discretion standard. Roberts, 882 So.2d at 233 (citing Bang, 749 So.2d at 52).
¶ 10. The youth court’s confidentiality order had two effects. First, it required that Doe’s youth-court records remain confidential. Second, it prohibited those present at the final hearing from speaking to the media about the case. Cruz argues that she either waived record confidentiality, or that it is now moot. Further, she contends that the order’s speech restriction violated her First Amendment rights.
I. Record confidentiality neither has been waived, nor is it moot.

A. Youth-court records are confidential under Mississippi law.

¶ 11. Youth-court records include the general docket, papers, pleadings, social records, the minute book, proceedings, evidence, and any information obtained by the youth court from the Administrative Office of Courts. Miss.Code Ann. § 43-21-251 (l)(a)-(f) (Rev.2009). These records “and the contents thereof shall be kept confidential and shall not be disclosed except as provided in Section 43-21-261.” Miss.Code Ann. § 43-21-251(2) (Rev.2009).
¶ 12. Section 43-21-261 governs the disclosure of youth-court records. Miss. Code Ann. § 43-21-261 (Rev.2009). This statute provides that “[r]ecords involving children shall not be disclosed, ... except pursuant to an order of the youth court specifying the person or persons to whom *340 the records may be disclosed, the extent of the records which may be disclosed and the purpose of the disclosure.” Miss.Code Ann. § 43-21-261(1) (Rev.2009). Orders for disclosure, furthermore, must be “limited to those instances in which the youth court concludes, in its discretion, that disclosure is required for the best interests of the child, the public safety or the functioning of the youth court.” Id.
¶ 13. Even when the youth court determines that disclosure is warranted, the information can be provided only to certain persons or agencies. Miss.Code Ann. § 43-21-261(l)(a)-(g) (Rev.2009). The minor, the minor’s parents, and the parents’ attorney also have the right to copy and/or inspect youth-court records. Miss.Code Ann. § 43 — 21—261(3)—(4) (Rev.2009). Once disclosed, the person or agency must keep the records confidential unless the youth court’s order allows otherwise. Miss.Code Ann. § 43-21-261(2) (Rev.2009).
¶ 14. None of Section 43-21-261’s exceptions apply here. Essentially then, the youth court’s order that Baby Doe’s youth-court records remain confidential was redundant. Her records would have remained confidential regardless, unless the youth court had ordered otherwise.

B. Cruz has not waived record confidentiality.

¶ 15. Cruz argues that the confidentiality of youth-court records may be waived and asserts two reasons why a waiver is proper here. First, Cruz asserts that she, as Baby Doe’s parent, has the constitutional right to direct the upbringing of her daughter. This includes, she argues, the right to waive record confidentiality if she determines that such a waiver is in her daughter’s best interest. Second, Cruz contends that she waived record confidentiality by filing a civil suit in federal district court over JCDHS’s handling of the custody matter.[2]

1. Cruz does not have a parental right to expressly waive the confidentiality of Baby Doe’s youth-court records.

¶ 16. Cruz argues that she has a parental right to waive the confidentiality of Baby Doe’s youth-court records. Yet, the cases she cites as support — Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) — are unpersuasive. In Pierce, the United States Supreme Court held that an Oregon law requiring children ages eight to ten to attend public schools “unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control.” Pierce, 268 U.S. at 529, 534-35, 45 S.Ct. 571. In Meyer, the Court struck down a Nebraska law requiring every subject to be taught in English and forbidding the teaching of any language except English before the eighth grade. Meyer, 262 U.S. at 400, 43 S.Ct. 625. While Pierce and Meyer affirm parents’ rights to direct and control the upbringing and education of their children, neither supports that this right includes a right to waive the confidentiality of their child’s youth-court records.
¶ 17. Cruz cannot waive the confidentiality of Baby Doe’s youth-court records just because she is Doe’s parent and wishes to do so. Under Section 43-21-261(1), a youth court can disclose youth-court records only if it determines that “disclosure is required for the best interests of the child, the public safety or the *341 functioning of the youth court....” Miss. Code Ann. § 43-21-261(1) (Rev.2009). Anyone seeking disclosure under Section 43-21-261(1), including a parent, must prove one of these conditions. Parental status alone is not sufficient.

2. Cruz did not waive confidentiality by filing a related civil suit.

¶ 18. Cruz also argues that confidentiality has been waived as a result of pending civil litigation in federal district court. On December 30, 2010, the United States District Court for the Southern District of Mississippi ordered that Cruz’s complaint be unsealed. It did so “[i]n light of the presumption that court filings should be publicly available ... and [Cruz’s] willingness to waive the confidentiality provisions of Miss.Code Ann. § 43-21-261.... ” The district court further ordered that any future filings containing information from Baby Doe’s youth-court proceedings and any records from the Mississippi Department of Human Services be part of the public record.
¶ 19. Cruz points to this Court’s decision in Daniels by Glass v. Wal-Mart Stores, Inc., 634 So.2d 88 (Miss.1993), as support that record confidentiality is lifted whenever a related civil action is filed. In that case, Daniels, a minor, filed suit against Walmart, alleging that one of its security guards had slandered, assaulted, and battered him. Daniels, 634 So.2d at 89-90. Daniels’s scuffle with the security guard caused him to be adjudicated a delinquent in youth court. Id. at 91. The youth court released its delinquency order to the circuit court, which enabled Wal-mart to introduce evidence from Daniel’s youth-court proceedings at trial. Id. at 91-93. This Court held that the youth court had authority to release the delinquency order and that it had not erred in allowing evidence from Daniels’s delinquency proceedings to be released for the civil trial. Id. at 91-93. The Court explained that “[t]he right of ‘confidentiality’ on behalf of the child is a ‘qualified’ and not an ‘absolute’ privilege.” Id. at 93 (quoting Ex Parte State Farm Fire & Cas. Co., 529 So.2d 975, 977 (Ala.1988)). By initiating a slander suit, Daniels had “lifted the veil of confidentiality.” Daniels, 634 So.2d at 93. Since truth is a defense to slander, Daniels could not have filed suit and expected to present an incomplete picture of the “Walmart incident” to the court. Id.
¶ 20. We hold that Daniels does not support the proposition that record confidentiality is waived completely whenever a related civil suit is filed. “Daniels stands only for the narrow proposition that a juvenile adjudication is admissible on the issue of character where that trait is at issue, such as, for example, in a slander suit.” Sample v. State, 643 So.2d 524, 528 n. 1 (Miss.1994). The youth-court order in Daniels specifically authorized the release of the delinquency adjudication to the circuit court to allow Walmart to present a complete picture of the incident to the jury, subject to the court’s discretion. Daniels, 634 So.2d at 91. The disclosure in Daniels, therefore, was limited for the purposes of the related civil litigation. Id. Though Cruz effectively has waived record confidentiality for the purposes of the related civil litigation, as the defendant did in Daniels, we find that the waiver does not extend beyond that scope. Any documents that are not made part of the record in Cruz’s federal civil suit will remain confidential under Mississippi law.

C. Record confidentiality is not moot.

¶ 21. Cruz argues that record confidentiality is practically moot now, because many youth-court records are now publicly available through the numerous filings in the federal case.
*342 ¶ 22. This Court has stated that it will not consider an issue that “has become moot or academic, or if an event has occurred which makes a determination of it unnecessary, or renders it impossible for an appellate court to grant effectual relief.” Orgill Bros. & Co. v. Roddy, 227 Miss. 291, 298, 86 So.2d 37, 39 (1956) (citation omitted).
¶ 23. Although the unsealing of Cruz’s complaint in federal court resulted in a limited release of confidential documents, record confidentiality as to most of the other records is still in force. In fact, record confidentiality still applies to 328 of the 354 youth-court documents, and three of the five youth-court exhibits. Many of the documents that remain sealed are substantive in nature, such as MDHS’s various child/adult abuse/neglect intake forms, Reports of Suspected Abused/Neglected Child, MDHS Current Status Reports from November 2009 to February 2010, MDHS reports to the youth court from February 2010, transcripts of hearings in November 2009 and February 2010, and a Guardian Ad Litem report, as well as the parties’ various motions and legal memo-randa filed in youth court. Discovery is not complete, however.[3] The federal-litigation process still can serve as a protective filter if the need arises. For example, once unsealed, the federal court in its discretion may reseal certain records or portions thereof.
¶ 24. We decline to hold that record confidentiality is now moot. If record confidentiality were deemed moot, Cruz conceivably could publish and disseminate the youth-court records as she wishes. Under the current circumstances, Section 43-21-261 still has the effect of limiting the pub-lie’s ability to view, copy, or otherwise disseminate the youth-court records for any other reason.
¶ 25. In sum, we find that record confidentiality has not been waived and is not moot. Cruz cannot expressly waive record confidentiality just because she is a parent, and she did not waive such confidentiality by filing a related suit in federal court. The federal court still could determine that certain youth-court records should be sealed or resealed. The majority of the youth court’s record remains confidential. Therefore, the youth court did not abuse its discretion by ordering that the youth-court records remain sealed.
II. The youth court did not conduct a proper inquiry concerning the First Amendment implications of the gag order.
¶ 26. Cruz argues that, due to the unsealing of the federal litigation, the only part of the youth court’s order that remains intact is the speech restriction. She contends that the speech restriction was an unconstitutional, prior restraint on free speech in violation of the First Amendment to the United States Constitution. She asserts that the State has not shown any compelling governmental interest to justify the restriction and that, even if it has, the restriction was not narrowly tailored or the least restrictive means of protecting such interest. Cruz insists that the State’s only two possible interests are: (1) to prevent the disclosure of embarrassing revelations about government misconduct or (2) to protect the government’s own perception of what is in Baby Doe’s best interest. Constitutional challenges are issues of law and are reviewed de novo. *343 Deeds v. State, 27 So.3d 1135, 1141 (Miss.2009) (citing Thoms v. Thoms, 928 So.2d 852, 855 (Miss.2006)).
¶ 27. The State argues that we should not entertain Cruz’s First Amendment arguments; to do so, it argues, would allow Cruz to challenge improperly the constitutionality of a Mississippi statute and a rule of court. We must first note that Cruz is not challenging the constitutionality of any statute or rule. Rather, she is challenging the constitutionality of that portion of the youth court’s order that prevented her and other hearing participants from speaking to the media. Alternatively, the State argues that First Amendment rights are not absolute but must be balanced against other interests. The other interests here are the need to protect the integrity of youth-court proceedings and Baby Doe’s rights to privacy and due process.
¶ 28. The First Amendment to the United States Constitution states that “Congress shall make no law ... abridging the freedom of speech.... ” U.S. Const. amend. I. Freedom of speech “is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action.” Nebraska Press Ass’n v. Stuart, 427 U.S. 539, 556, 96 S.Ct. 2791, 2801, 49 L.Ed.2d 683 (1976) (quoting Near v. Minnesota ex rel. Olson, 283 U.S. 697, 707, 51 S.Ct. 625, 628, 75 L.Ed. 1357 (1931)). First Amendment freedoms are not absolute, however; they must be “ ‘applied in light of the special characteristics of the [relevant] environment.’ ” U.S. v. Brown, 218 F.3d 415, 424 (5th Cir.2000) (quoting Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969)). Thus, even though ‘“litigants do not ‘surrender their First Amendment rights at the courthouse door,’ those rights may be subordinated to other interests that arise in the context of ... trials.’ ” Brown, 218 F.3d at 424 (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 2207-08 n. 18, 81 L.Ed.2d 17 (1984)).
¶ 29. Gag orders — “order[s] directing parties, attorneys, witnesses, or journalists to refrain from publicly discussing the facts of a case”[4] — resemble prior restraints on speech. Brown, 218 F.3d at 424 (citing In re Dow Jones, 842 F.2d 603, 609 (2d Cir.1988)). A prior restraint occurs when government suppresses speech based on its content before the speech is uttered. In re G. & A. Books, Inc., 770 F.2d 288, 296 (2d Cir.1985); see also Lawson v. Murray, 515 U.S. 1110, 1113, 115 S.Ct. 2264, 132 L.Ed.2d 269 (1995) (Scalia, J., concurring) (stating that “[a]ll speech-restricting injunctions are prior restraints in the literal sense of “ ‘administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur ....”’”) (citations omitted). Generally, there is a “ ‘heavy presumption’ ” against the constitutionality of prior restraints on speech. Nebraska Press Ass’n, 427 U.S. at 558, 96 S.Ct. 2791 (citing Carroll v. Princess Anne, 393 U.S. 175, 181, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968)). See also, Id. at 559, 96 S.Ct. 2791 (finding that prior restraints on speech are “the most serious and the least tolerable infringement on First Amendment rights.”)). Thus, the State must show that the speech it seeks to restrict poses a threat to an important government interest. Gentile v. State Bar of Nevada, 501 U.S. 1030, 1054, 111 S.Ct. 2720, 2734, 115 L.Ed.2d 888 (1991).
¶ 30. Typically, such restraints are directed at the press and are upheld “only if the government can establish that ‘the ae- *344 tivity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest.’ ” Brown, 218 F.3d at 425 (quoting Levine v. United States District Court, 764 F.2d 590, 595 (9th Cir.1985)). Further, the government must “establish that the order has been narrowly drawn and is the least restrictive means available.” Brown, 218 F.3d at 425 (citing Levine, 764 F.2d at 595). However, courts apply different standards when reviewing gag orders directed at trial participants. The United States Courts of Appeals for the Sixth, Seventh, and Ninth Circuits have applied some form of the “clear-and-present-danger” test articulated above. Brown, 218 F.3d at 427 (citing United States v. Ford, 830 F.2d 596, 600-02 (6th Cir.1987); Chicago Council of Lawyers v. Bauer, 522 F.2d 242, 249 (7th Cir.1975), cert. denied sub nom. Cunningham v. Chicago Council of Lawyers, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976); Levine, 764 F.2d at 596). But the Fourth, Fifth, and Tenth Circuits have adopted a less stringent standard; those courts have held that a trial court may restrain extrajudicial comments by trial participants if the comments present a “reasonable” or “substantial” likelihood of prejudicing a fair trial. Brown, 218 F.3d at 427-28 (citing In re Russell, 726 F.2d 1007,1010 (4th Cir.1984); United States v. Tijerina, 412 F.2d 661, 666-67 (10th Cir.1969)).
¶ 31. In Gentile v. State Bar of Nevada, a majority of the Supreme Court stated that its prior precedent “‘rather plainly indicate[d] that the speech of lawyers representing clients in pending eases may be regulated under a less demanding standard than that established for regulation of the press....’” Brown, 218 F.3d at 426 (quoting Gentile, 111 S.Ct. at 2744). Thus, the Court “found that demonstrating a ‘substantial likelihood of material prejudice’ from an attorney’s extrajudicial comments, ... as opposed to a ‘clear and present danger,’ was constitutionally sufficient to justify prescribing [sic] attorney comments of that type.” Brown, 218 F.3d at 426 (citing Gentile, 111 S.Ct. at 2745). Yet, the Gentile Court approved only Nebraska’s “substantial likelihood” standard as applied to gag orders directed at attorneys; the Court did not articulate a standard for evaluating gag orders directed at attorney and nonattorney trial participants. Brown, 218 F.3d at 426.
¶ 32. In Brown, the United States Court of Appeals for the Fifth Circuit considered the constitutionality of a lower court’s gag order that essentially prohibited the attorneys, parties, and witnesses from discussing the case with the media. Brown, 218 F.3d at 418, 423. The court adopted an approach less stringent than the clear-and-present-danger test for two reasons. Id. at 427. First, it noted that the cases that had endorsed some form of the clear-and-present-danger test all had predated the Supreme Court’s decision in Gentile. Id. Second, it explained that the clear-and-present-danger standard was aimed at “protecting the unique role of the press as the public’s ‘eyes and ears’ into the criminal justice system ....”; those concerns are not as acute, however, when the restriction is directed at trial participants. Id. (citations omitted). The Fifth Circuit thus stated the applicable standard as follows:
[W]e conclude that in light of Gentile, clear and present danger cannot be the appropriate standard by which we evaluate gag orders imposed on trial participants. Instead, the standard must require a lesser showing of potential prejudice. If the district court determines that there is a substantial likelihood (or perhaps even merely a reasonable likelihood, a matter we do not reach) that extrajudicial commentary *345 by trial participants will undermine a fair trial, then it may impose a gag order on the participants, as long as the order is also narrowly tailored and the least restrictive means available. This standard applies to both lawyers and parties, at least where the court’s overriding interest is in preserving a fair trial and the potential prejudice caused by extrajudicial commentary does not significantly depend on the status of the speaker as a lawyer or party.
Brown, 218 F.3d at 428 (emphasis added).
¶ 33. The Fifth Circuit’s reasoning for adopting the less stringent substantial-likelihood-of-harm test in Brown is not helpful in this particular case. The governmental interest at stake in Brown, maintaining integrity and fairness in judicial proceedings, is not implicated here. Baby Doe’s youth-court proceeding has concluded, so there is no threat that the trial’s integrity could be tainted by extrajudicial communication.
¶ 34. As such, the substantial-likelihood-of-harm test from Brown imper-missibly burdens Cruz’s right to free speech in this case, and the clear-and-present-danger test applies. Indeed, other states have applied similar tests when reviewing gag orders imposed on youth-court participants. See, e.g., In re T.T., 18 Neb. App. 176, 779 N.W.2d 602, 614-621 (2009) (applying “imminence and magnitude of danger” test on review of a youth-court gag order); State ex rel L.M., 37 P.3d 1188, 1193-96 (Utah App.2001) (vacating youth-court gag order from concluded proceeding after finding the youth court failed to identify the “imminence and magnitude of the danger” caused by disclosure); In re J.S., 267 Ill.App.3d 145, 204 Ill.Dec. 30, 640 N.E.2d 1379, 1382 (1994) (holding that a prior restraint on speech, to be valid, must be necessary to “obviate a ‘serious and imminent’ threat of impending harm”). This test is better suited to weigh the alleged governmental interests at stake against a right that serves as “the core of the First Amendment”: Cruz’s and her daughter’s right to speak out about alleged government misconduct. See Butterworth v. Smith, 494 U.S. 624, 632, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990). For a restraint on such speech to prevail, the State must present a need to further “a state interest of the highest order.” Id. To overcome the presumption of invalidity, the trial court must determine: “(1) whether publication would result in damage to a ‘near sacred right,’ (2) whether the prior restraint would be effective and (3) whether less extreme measures were available.” Jeffries v. State, 724 So.2d 897, 899 (Miss.1998) (quoting Matter of Providence Journal, 820 F.2d 1342 (1st Cir.1986)) (citations omitted).
¶35. The State argues that the governmental interest at stake in this case is the protection of Baby Doe’s privacy. Yet, we find no reason why allowing Cruz to speak publicly about the youth-court proceeding would negatively affect Baby Doe. In fact, the State’s interest in protecting the confidentiality of this youth-court proceeding seems to have been significantly diminished, if not negated, by the fact that Cruz was exonerated of any wrongdoing, and her parental rights were restored. Finally, this case does not implicate weighty issues such as abuse or neglect that would necessitate confidentiality of proceedings. Even so, the court must weigh the State’s alleged interests against the participants’ rights to free speech. Cf. In re A Minor, 149 Ill.2d 247, 172 Ill.Dec. 382, 595 N.E.2d 1052, 1056 (1992) (holding that, in a case involving minor victims of sexual abuse by a parent, the State has an interest in the nondisclosure of the victims’ identities, and the victims have a compel *346 ling interest against the invasion of their privacy, but these interests must still be weighed against “the need for free and unfettered expression.”)
¶ 36. Nothing in the record shows that the youth court engaged in any type of analysis to determine the propriety of its gag order. The youth court announced this restriction on its own accord, with no offering of evidence from the parties. In addition, the youth court neither pointed to any compelling interest that would be protected through the imposition of the gag order nor found that such a restriction was narrowly tailored to protect that interest. The youth court did mention “the nature of these proceedings, the welfare, safety and the best interest of the child,” but the court neglected to share the basis of its findings. Finally, the court failed to weigh any relevant competing interests against the participants’ First Amendment rights.
¶ 37. Though the youth court failed to consider any balancing test before imposing the gag order, we find that there exists no imminent danger to a compelling interest of such magnitude that the restraint on the parties’ speech would be warranted. As mentioned above, the State cannot assert a right to protect the fairness of judicial proceedings, since Baby Doe’s youthc-ourt proceeding has concluded. On the other hand, Cruz’s fundamental right to publicly criticize government action should be restrained only under compelling circumstances. In addition, Baby Doe’s privacy interests can be furthered by continued record confidentiality as well as the filter provided by the federal court during Cruz’s ongoing litigation. Therefore, we reverse the portion of the youth court’s order that prohibited the hearing participants from speaking to the media. Because we find no compelling reason to keep the gag order in place, we render judgment on this issue in favor of Cruz.
CONCLUSION
¶ 38. We find that the youth court did not abuse its discretion in ordering that its records remain confidential. However, the trial court erred in issuing the gag order because no compelling state interest exists in this case that could justify its imposition. Therefore, we affirm in part, and reverse in part and render judgment regarding the gag order in favor of Cruz.
¶ 39. AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
RANDOLPH, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. KING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.

. A fictitious name is used to protect the minor’s identity.

. Cruz v. Miss. Dep't of Human Servs., 3:10-cv-00446-HTW-FKB (S. Dist. Miss, filed August 12, 2010)).

. The federal litigation, Cruz v. Mississippi Department of Human Services, 3:10-cv-00446-HTW-FKB (S.D. Miss, filed August 12, 2010), was still in pretrial posture as of May 3, 2013. See Notice of Telephonic Status Conference before Magistrate Judge F. Keith Ball, May 3, 2013, ECF No. 208 (the most recent filing in federal court on PACER).

. Black's Law Dictionary 543 (abr. 7th ed.2000).