# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01610-SCT

*NANCY CAROLINE YOUNG BROOKS, HUGH H.
YOUNG AND EDDIE M. YOUNG, JR., AND ALL
WRONGFUL DEATH BENEFICIARIES OF
DOROTHY ALINE YOUNG, DECEASED*

*v.*

*DR. JAMES F. ROBERTS, DR. WELLS WILSON
AND KING'S DAUGHTERS HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/24/2002 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JOE DALE WALKER |
| ATTORNEYS FOR APPELLEES: | JACQUELINE GRACE HARPER |
| | STUART BRAGG HARMON |
| | DEANNE BRODRICK SALTZMAN |
| | JOHN MICHAEL COLEMAN |
| | JOSEPH L. McNAMARA |
| | MATHEW D. MILLER |
| | J. ROBERT RAMSAY |
| | STUART BRAGG HARMON |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED – 09/16/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     On September 20, 2000,  a complaint was filed in Lincoln County Circuit Court that alleged the

mother of Nancy Caroline Young Brooks, Mrs. Dorothy Aline Young, had died as a result of medical

malpractice. The complaint named Dr. James F. Roberts, Dr. Wells Wilson, and the hospital where Mrs. Young was treated, King's Daughters Hospital, as defendants.

¶2. One month later Dr. Roberts answered and propounded written discovery to Brooks, in part about what expert witness was retained.[1] This is required under Mississippi Rule of Civil Procedure 26(b)(4), which mandates certain disclosures concerning expert witnesses. No answer was received. On March 26, 2001, the parties agreed to extend discovery for 30 days. There was still no response from Brooks, and on April 26, 2001, Dr. Roberts made a Motion to Compel Discovery.

¶3. After a continued lack of compliance with Rule 26, the trial judge entered an "Order Compelling Discovery" on August 22, 2001, which commanded the parties to agree upon a scheduling order. Despite this order, Dr. Roberts never received any information regarding Brooks' medical expert, and he filed a Motion for Summary Judgment on February 19, 2002, arguing that Brooks had not met the prima facie requirements for a medical malpractice action.

¶4. Instead of ruling on the summary judgment motion, the trial court compromised and entered an Order Compelling Discovery. The order mandated that Brooks "secure the testimony or Affidavit" of the doctor they would present as their expert, and that it "comport with Mississippi law in all respects regarding the requisite burden of proof." If the affidavit did not meet that burden, the trial court ordered that it would "dismiss all claims against the movants with prejudice." The order gave Brooks 45 days to offer the evidence from the date of entry, which was April 19, 2002.

¶5. Despite that deadline, no evidence arrived. The trial court entered an "Order and Judgment of Dismissal" on July 8, 2002, since the 45-day period had expired. On July 18, 2002, Brooks filed a

---

[1] While each defendant conducted their affairs separately in this case, we will use "Dr. Roberts" as short hand for their actions.

"Motion to Set Aside Order and Judgment of Dismissal" which admitted that they could not secure timely expert testimony. Brooks attributed the difficulty to the burgeoning "tort reform" movement, where many medical professionals exhibited a great interest in the capping of liability and damages.

¶6.     At the hearing on the motion, counsel for Brooks offered that due to the tort reform issue his medical expert "wouldn't talk" with him, and that "it's hard to get any of [the doctors] to cooperate." The trial court was unpersuaded. Since "[t]here was no doubt about what the law is," a prima facie case for medical malpractice could not be shown without expert testimony. The judge also showed frustration with this case, saying:

> I have bent over backwards. I've done everything I know to do. I'm not going to leave this thing open. It comes to a point in time where you have got to fish or cut bait. And that time has passed, so the motion [to set aside the summary judgment] is denied.

Brooks appeals that ruling, urging two errors: first, that the trial court erred in granting summary judgment in favor of Dr. Roberts, and secondly, that the trial court erred in denying her motion to set aside the judgment of dismissal and motion for rehearing on the same.

## DISCUSSION

¶7.     We use a de novo standard of review to completely examine a lower court's grant or denial of summary judgment. *Bowie v. Montfort Jones Mem'l Hosp.*, 861 So.2d 1037, 1040 (Miss. 2003). The proponent of a summary judgment motion bears the burden of showing that there are no genuine issues of material fact. *Id.* More then general allegations are needed to defeat a motion for summary judgment; there must be specific facts showing that material issues of fact exist. *Id.* at 1040-41. We view all evidence in the light most favorable to the nonmoving party. *Id.* at 1041. We will only reverse the decision of the trial court if there are indeed triable issues of fact. *Id.*

3

¶8. In the case at hand, Brooks argues that we should excuse the great delay in procuring an expert witnesses because the expert she attempted to retain, Dr. Kate Aseme, repeatedly delayed signing prepared affidavits, eventually rebuffing her completely. Counsel for Brooks went to the office of Dr. Aseme on "repeated occasions" with prepared affidavits and with requests to depose her. After Dr. Aseme agreed to the deposition date, she later cancelled, offering that once she had talked to her attorney she was advised she did not have to attend the deposition. After contacting Dr. Aseme's attorney, counsel for Brooks was finally informed that the doctor had been advised by the lawyer for her malpractice insurance carrier not to sign an affidavit or give a deposition. Brooks proposes this process frustrated her ability to procure an expert witness.

¶9. She also admits that there was ultimately no expert witness for the case. Although a doctor had apparently been engaged to testify, the letter which outlined his opinions was "not attached and presented to the Court to meet the requirements under Mississippi Law to prove medical negligence, but was offered to show that the appellants were making efforts to obtain some other medical expert other than Dr. Aseme."

¶10. Dr. Roberts urges we ignore any mitigating facts and stick to the plain language of the order and to the law. By attempting to procure an expert witness, Brooks appears to concede that this issue is out of the understanding of laypersons, and "[e]xpert testimony is required unless the matter in issue is within the common knowledge of laymen." *Palmer v. Biloxi Reg'l Med. Ctr., Inc*., 564 So.2d 1346, 1355 (Miss. 1990). From the very moment the suit was filed it was known that an expert witness would be needed to survive summary judgment, for it is our general rule that in a medical malpractice action negligence *cannot be established* without medical testimony that the defendant failed to use ordinary skill and care. *See Sheffield v. Goodwin*, 740 So.2d 854, 858 (Miss. 1999).

¶11.    There were roughly twenty *months* between the time Dr. Roberts propounded discovery requesting expert witness information and the day summary judgment was entered.  Brooks had not delivered discovery responses  long before the so-called tort reform actions had begun in the Legislature. The entirety of 2001 elapsed before the Legislature met to discuss changes in the civil justice system in 2002.  That argument strains credibility.

¶12.    This case is reminiscent of *Bowie*.  There  the plaintiff did not designate an expert witness until over two months had passed after the deadline for designation of expert witnesses, and over a month after one or more of the motions for summary judgment were filed.  *Bowie*, 861 So.2d at 1040.  The trial judge entered summary judgment, and we affirmed.  *Id.* at 1040, 1043.  We reiterated the necessity for "litigants [to] understand that there is an obligation to timely comply with the orders of our trial courts" and "take seriously their duty to comply with court orders." *Id.* at 1043.

¶13.    Yet the failure to comply with the orders of the trial court in this case are even more exaggerated than in *Bowie*.  There was never an expert witness designated *at all*.  The order which Brooks violated was already a 45-day extension on designating a witness.  After that deadline was passed, it took Brooks *90 days* to file a motion to set aside the summary judgment, a motion which still did not designate an expert witness.  This was a direct violation of the order of the trial court and shows a flagrant disregard for the orderly administration of our trial courts.

¶14.    Judges have used various allegories to describe this situation.  The trial judge in this case said that the plaintiff had to "fish or cut bait."  We have said that at some point the train leaves the station.  *See Bowie,* 861 So.2d at 1043; *Guar.  Nat'l  Ins.  Co. v. Pittman,* 501 So.2d 377, 389 (Miss. 1987). No mater the words, the meaning is the same:  parties must use all good faith to comply with the order of the trial court.  That good faith was not present here, and Brooks failed wholly in her duty to designate a

medical expert. Litigants must understand that their cases are at risk without good faith compliance with the orders of the trial courts. Accordingly, the summary judgment grant in favor of Dr. Roberts is affirmed.

¶15.  Next, Brooks argues that the trial court erred in denying her motion to set aside the judgment of dismissal and motion for rehearing on the same. A motion for reconsideration is to be treated by the trial court as a post-trial motion under M.R.C.P. 59(e). *Boyles v. Schlumberger Tech. Corp.,* 792 So.2d 262, 265 (Miss. 2001) (quoting *In re Estate of Stewart,* 732 So.2d 255, 257 (Miss. 1999)). Thus, a motion to set aside or reconsider an order granting summary judgment will be treated as a motion under Rule 59(e). *Allen v. Mayer,* 587 So.2d 255, 261 (Miss. 1991). We have held that in order to succeed on a Rule 59(e) motion, the movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice. *Bang v. Pittman,* 749 So.2d 47, 52-53 (Miss. 1999). This Court reviews a trial court's denial of a Rule 59 motion under an abuse of discretion standard. *Bang,* 749 So.2d at 52.

¶16.  Brooks offers nothing in her brief to demonstrate an abuse of discretion by the trial court in denying her motions to alter the judgment. Brooks shows neither (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice. *Id.* at 52-53. While the trial judge erred in the computing the ten (10) day period following entry of judgment wherein a party can move to alter or amend a judgment pursuant to M.R.C.P. 59(e), the denial of the motions was not an abuse of discretion.

## CONCLUSION

¶17.  For these reasons, we affirm the circuit court's judgment and its order denying plaintiffs' motions to alter the judgment.

¶18.  **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**