GRIFFIS, P.J.,
for the Court:
¶ 1. The chancellor entered a final judgment for Florence Aldridge against Louis Aldridge, Janice Aldridge, Brian Al-dridge, and Touched by an Angel Ministries, Inc. (“TBAAM”). Brian and TBAAM appeal; they argue that the chancellor erred when he failed to dismiss the case based on the statute of limitations, held Brian personally liable, found that an officer of a nonprofit entity has an implied duty to investigate the source of contributions, and increased the judgment based on a post-trial motion. Florence filed a cross-appeal; she argues that the award of damages was insufficient and punitive damages were warranted. We find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Florence Aldridge is the widow of David Lee Aldridge. Louis Aldridge was David’s brother. After David’s death and prior to 2003, Florence lived in Lakeland, Florida. She suffered a long medical history of bipolar disorder, extreme depression, and adverse effects of cancer. After the death of both her mother and her husband, Florence’s medical condition worsened.
¶ 3. In January 2003, Louis went to Florida to help Florence. On January 23, 2003, Louis and Florence went to a Florida attorney. The attorney prepared a durable power of attorney that appointed Louis. Florence signed the power of attorney, and it stated that the powers granted to Louis “shall be exercised solely in a fiduciary capacity for my [ (Florence’s) ] benefit and on my behalf.”
¶ 4. In December 2004 or January 2005, Florence moved to Tupelo, Mississippi, to live with Louis and his wife, Janice Al-dridge. Florence lived on the property owned by Louis and Janice, and they helped to care for her. Shortly thereafter, Florence was committed to a mental institution for treatment based on a court order that Louis obtained. Florence was discharged in 2006, and she returned to live with Louis and Janice.
¶ 5. In the summer of 2007, Florence was prescribed a new medication that dramatically improved her capacity to function in everyday activities. As a result, Florence began to ask about her financial situation, which had been under Louis’s complete control. Louis refused to discuss it with her. Eventually, Louis told Florence that he had spent all of her savings on her medical treatment.
¶ 6. On July 21, 2008, Florence talked to Joe Tetter, her late husband’s former accounting partner, and told him of her financial affairs.[1] Tetter expressed his concern. Tetter was familiar with Florence’s finances. Tetter told Florence that her medical insurance should have paid for her treatment, and she should be financially solvent. Florence began to investigate her finances. She hired an attorney. She asked Louis to provide her with an accounting of her funds. Louis failed to comply. Florence revoked Louis’s power of attorney in November 2008.
*1131 ¶ 7. On December 22, 2008, Florence filed a complaint in chancery court. The complaint named Louis as the only defendant. The complaint demanded that Louis provide an accounting and inventory of Florence’s property. The complaint also asked for an award of damages for any actions or inactions taken by Louis inconsistent with the fiduciary duty he owed Florence.
¶ 8. Through discovery, Florence learned That Louis had written checks from her accounts and deposited funds with Janice and TBAAM. The chancellor noted that TBAAM “was established as a nonprofit corporation in 1996 for a very laudable purpose, to provide a camping experience for mentally challenged young people and adults.” Louis had formed TBAAM. Louis named Brian as TBAAM’s chief executive officer (CEO) upon its incorporation. In 2010, the Mississippi Secretary of State’s Office investigated TBAAM and removed its charitable tax-exemption status. The charitable status was later reinstated on the condition that Louis and Janice have no involvement.
¶ 9. On April 28, 20Í0, Florence filed her first amended complaint. The complaint added Janice and TBAAM as defendants and asserted claims of fraud, embezzlement, and unjust enrichment.
¶ 10. After additional discovery, Florence learned that Brian Aldridge, who is Louis’s son, used some of her money, which had been transferred to TBAAM, for his personal benefit. Thereafter, on November 24, 2010, Florence filed a second amended complaint that added Brian as a defendant. This complaint asserted claims for forgery, conspiracy, and a violation of the Mississippi Uniform Fraudulent Transfer Act.
¶ 11. The trial began on August 23, 2011. An appearance was made by counsel for Florence, counsel for Louis and Janice, and counsel for Brian and TBAAM. The chancellor heard testimony from one witness. The chancellor then considered and denied the motion to dismiss filed by Brian and TBAAM. Thereafter, counsel for Louis and Janice provided the chancellor with a notice of their bankruptcy filing. The chancellor recognized that the stay of bankruptcy would not permit the court to proceed with the claims against Louis and Janice. The trial was then continued.
¶ 12. The trial resumed on December 7, 2011, and ended on December 20, 2011. Both Louis and Janice were called to testify. But they both invoked their Fifth Amendment right against self-incrimination and refused to testify. Other evidence was presented that revealed over $552,000 of Florence’s assets were transferred by Louis to himself, Janice, Brian, TBAAM, or another venture controlled by Louis — Touched by an Angel Ministry Enterprises, Inc. (“Enterprises”).[2]
¶ 13. Brian testified about his role with TBAAM. Brian was named CEO of TBAAM in 1996, when he was nineteen years old. Brian stated that he knew little about TBAAM and knew nothing about its funding. As CEO for TBAAM, from 1996 until the trial, Brian was paid approximately $15,000 for his work at TBAAM. Brian testified that he took an active role in helping with campers, but Louis ran the finances of TBAAM. Brian stated that he *1132 loved his father, but they had a personality conflict. Brian also testified that one does not say no to his father without there being consequences. Brian also signed TBAAM’s tax returns, but he said that he did not look at them. Brian was not aware that TBAAM owed over $35,000 in unpaid taxes, and he was unaware that thousands of dollars in bank overdraft fees were owed by TBAAM.
¶ 14. The evidence also revealed that Florence’s money was used by TBAAM and Enterprises. From TBAAM and Enterprises, the Aldridge family paid off personal debts, made mortgage payments, bought clothing, paid for car repairs, paid for vacations, paid a relative’s college tuition, and made political contributions. Specifically, there was evidence that funds from TBAAM or Enterprises paid Brian’s expenses for a honeymoon in Hawaii, his mortgage payments, his personal-debt payments, his wife’s car repairs, his wife’s college tuition, and clothing.
¶ 15. When Florence resumed control of her finances, she learned that her credit reputation was tarnished. She had lost her house, two cars, and all of her savings. She was also left with a tax debt from Louis’s failure to report the $30,000 withdrawal from a certificate of deposit. Florence’s only retirement income is a small pension and Social Security benefits. She rents an apartment and must continue to work to pay off the federal tax lien.
¶ 16. At the end of the trial on December 20, 2011, the chancellor announced his ruling from the bench. The chancellor entered a final judgment on January 12, 2012, and a copy of the transcript of the oral ruling was attached. The final judgment read:
ORDERED, ADJUDGED AND DECREED, that Florence Aldridge be and she is hereby granted judgment jointly and severally against Louis Aldridge and Janice Aldridge in the amount of [$552,000,] for which let execution issue. It is further,
ORDERED, ADJUDGED AND DECREED, that Florence Aldridge be and she is hereby awarded judgment against [TBAAM], in the amount of [$140,100,] for which let execution issue....
¶ 17. On January 20, 2012, Florence filed a motion for additional findings of fact and conclusions of law and to amend the judgment based upon additional findings and conclusions. The motion asked the chancellor to increase the amount of the judgment against TBAAM and to enter a judgment against Brian. TBAAM and Brian responded. The motion was set for a hearing on February 28, 2012. The record does not indicate whether a hearing was held and does not contain a transcript of a February 28 hearing.
¶ 18. On May 23, 2012, the chancellor entered a memorandum opinion and judgment. In this judgment, the chancellor increased the judgment against TBAAM to $218,455 and entered a judgment against Brian for $218,355.
¶ 19. TBAAM and Brian then filed a motion for a new trial. After a hearing, the chancellor entered an order that denied the motion for a new trial.
STANDARD OF REVIEW
¶ 20. “A chancellor’s findings of fact will not be disturbed unless manifestly wrong or clearly erroneous.” Consol. Pipe & Supply Co. v. Colter, 735 So.2d 958, 961 (¶ 13) (Miss.1999). The appellate court “will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong ... [or] clearly erroneous[,] or [applied] an erroneous legal standard[J” Kilpatrick v. Kilpa *1133 trick 732 So.2d 876, 880 (¶ 13) (Miss.1999) (citation omitted).
ANALYSIS

I. Issues Presented by Brian and TBAAM

A. Whether Florence’s claims against Brian and TBAAM are barred by the statute of limitations.

¶ 21. Brian and TBAAM argue that the statute of limitations barred Florence’s claims against them. The chancellor rejected this defense when he denied their motion to dismiss.
¶ 22. The parties agree that the three-year general statute of limitations period applies here. Mississippi Code Annotated section 15-1-49 (Rev.2012) provides:
(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
¶ 23. Brian and TBAAM argue that the three-year limitations period began to run when the last transaction occurred on March 9, 2007. Florence’s claim against TBAAM was filed on April 28, 2010, and her claim against Brian was filed on November 24, 2010. Brian and TBAAM also point to the fact that Florence testified that she regained her health, discovered her loss due to Louis’s action, and started to review her own bank statements in the summer of 2007. As a result, they argue that the three-year limitations period expired on March 8, 2010, or, at the latest, sometime in the summer of 2010.
¶ 24. Florence disagrees. Florence claims that the limitations period began to run on July 21, 2008, the date of her conversation with Tetter. Based on this conversation, Florence claims that she realized that she had been wronged by Louis, began to investigate her assets, and retained an attorney. Florence filed her complaint against Louis on December 22, 2008. She amended the complaint to add Janice and TBAAM on March 5, 2010. She filed a motion to amend her complaint on October 4, 2010, to add Brian. Thus, Florence claims that her claims were filed before the limitations period would have expired on July 20, 2011.
¶ 25. Florence also argues that her injury was a latent injury. Thus, she claims that the discovery rule, under section 15-1-49(2), governs. Florence also argues that her claims had been fraudulently concealed from her. Thus, she claims Mississippi Code Annotated section 15-1-67 (Rev.2012) also applies. It states:
If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.
¶ 26. Fraudulent concealment is an affirmative act to conceal the underlying tortious conduct. Robinson v. Cobb, 763 So.2d 883, 887 (¶ 19) (Miss.2000). To succeed on a claim of fraudulent concealment, the plaintiff must show he faded to discover the factual basis of the claims despite exercising due diligence. Id. Fraudulent concealment is an exception to any applicable statute of limitations. O’Neal Steel, Inc. v. Millette, 797 So.2d 869, 875 (¶ 22) (Miss.2001). “Due diligence *1134 ordinarily requires the plaintiff to make the best use of the facts available to him.” Anderson v. Equitable Life Assurance Soc’y of U.S., 248 F.Supp.2d 584, 590 (S.D.Miss.2003). When the fraudulent-concealment doctrine is applicable, the limitations period does not begin to run until the claims are discovered. Ross v. Citifinancial, Inc., 344 F.3d 458, 463 (5th Cir.2003).
¶ 27. The chancellor’s ruling on the motion to dismiss did not specify the date that he determined the statute of limitations began to run. Instead, the chancellor determined that the statute of limitations expired prior to the filing of the amended complaints against Brian and TBAAM. Nevertheless, the chancellor ruled that, pursuant to Mississippi Rule of Civil Procedure 15(c), Brian and TBAAM were properly added as defendants, and the amended pleadings related back to the original pleading.
¶28. We affirm the chancellor’s decision, although based on different reasoning. We conclude that the statute of limitations began to run at the earliest on July 21, 2008. Brian and TBAAM are correct that the earliest date that Florence’s claims could have accrued is September 26, 2006. However, the statute makes a specific exception for latent injuries. Miss.Code Ann. § 15-1-49(2). “A latent injury is one where the plaintiff [is] precluded from discovering harm or injury because of the secretive or inherently un-discoverable nature of the wrongdoing in question.” Ill. Cent. R.R. v. Guy, 682 F.3d 381, 393 (5th Cir.2012) (citation and internal quotation marks omitted). “In actions ... which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.” Miss.Code Ann. § 15-1-49(2).
¶29. Here, the very nature of Florence’s claims indicates that Louis concealed or hid her claims and injuries due to her mental status, the power of attorney, and his control over her finances. Florence testified that her conversation with Tetter, on July 21, 2008, revealed that she had an injury and a potential claim. As a result, Louis was able to hide Florence’s finances until then and until Louis’s power of attorney was revoked in November 2008. Florence testified that she questioned Louis about her money, but he would not respond, eventually telling her all the money had been spent on her medical expenses. The power of attorney created a fiduciary relationship for Louis to act in Florence’s best interest.
¶ 30. Thus, we conclude that this is a latent-injury case. As a result, “the focus is on the time that the [plaintiff] discovers, or should have discovered by the exercise of reasonable diligence, that he [or she] probably has an actionable injury.” Ill. Cent., 682 F.3d at 393 (citation and internal quotation marks omitted). Florence discovered that she “probably” had a claim on July 21, 2008, when Tetter expressed concern. The initial complaint and two amended complaints were filed and served within three years of July 21, 2008, and, thus, were timely. As a result, we find no merit to this issue.

B. Whether it was error for the chancellor to grant Florence’s post-trial motion.

¶ 31. Brian and TBAAM argue that the chancellor erred when he granted Florence’s post-trial motion. This issue concerns the procedural basis for the chancellor’s decision and not the substance of his findings. They claim that the chancellor did not have the authority to increase the amount of the judgment against TBAAM or to impose personal liability on Brian *1135 when the chancellor previously found no liability.
¶ 32. On January 20, 2012, Florence filed a timely post-trial motion, titled “Motion for Additional Findings of Fact and Conclusions of Law and to Amend Judgment Based Upon Additional Findings and Conclusions.” Brian and TBAAM filed a response.
¶ 33. On May 23, 2012, the chancellor entered a memorandum opinion and judgment. The chancellor considered three issues: “In her Motion Florence seeks (1) to impose liability on [Brian] in connection with [Enterprises], (2) to impose additional liability on [TBAAM], and (3) to impose liability on Brian....” As to the first issue, the chancellor ruled that Brian was not “jointly liable as to all of Florence’s funds ($453,737.50) which passed through [Enterprises].” The chancellor found no evidence to support a finding that Brian held a position with Enterprises that would support a finding of joint liability. As to the second issue, the chancellor held that “Exhibit 15 reveals that an additional $78,355 of Florence’s money passed first to [Enterprises], (a non-existent corporation controlled by Louis) and then to [TBAAM].” As a result, the chancellor found TBAAM liable for an additional $78,355, and he increased the judgment against TBAAM from $140,100 to $218,455. As to the third issue, the chancellor reversed his earlier decision on Brian’s personal liability and held “Brian breached his duty as an officer of [TBAAM] and is individually liable to Florence in the amount of $218,355.” This finding will be discussed in detail below.
¶ 34. Brian and TBAAM argue that the post-trial motion was an attempt to receive “a second opportunity” to prove her case, which is not allowed under Mississippi Rule of Civil Procedure 52(b). They claim that since Florence sought reconsideration of the judgment, her motion “is to be treated as a post-trial motion under [Mississippi Rule of Civil Procedure] 59(e).” Brooks v. Roberts, 882 So.2d 229, 233 (¶ 15) (Miss.2004). The court in Brooks held: “[I]n order to succeed on a Rule 59(e) motion, the movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice.” Id. They argue that Florence’s motion did not satisfy any of the three tests necessary to prevail. There was no intervening change in the law, and no new evidence was presented in her motion. Instead, the only evidence cited by Florence was introduced on the first day of trial and, according to the chancellor, fully reviewed by him prior to his initial judgment. They argue that no manifest injustice was prevented by increasing the judgment against TBAAM and finding Brian personally liable, as they were innocent parties to Louis’s schemes. The manifest injustice Louis perpetrated on Florence was merely transferred from Florence to Brian and TBAAM, not prevented.
¶ 35. Rule 52(b) provides:
Upon motion of a party filed not later than ten days after entry of judgment or entry of findings and conclusions, or upon its own initiative during the same period, the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may accompany a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised regardless of whether the party raising the question has made in court an objection to such findings or has filed *1136 a motion to amend them or a motion for judgment or a motion for a new trial.
The comment adds:
The purpose of Rule 52(b) is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment entered thereon. A party who failed to prove his strongest case is not entitled to a second opportunity by moving to amend a finding of fact and conclusion of law; the motion must raise questions of substance by seeking reconsideration of material findings or conclusions.
(Emphasis added). Rule 59(e) provides that “[a] motion to alter or amend the judgment shall be filed not later than ten days after entry of the judgment.”
¶ 36. Brian and TBAAM have accurately cited the applicable rules and the legal standard for the chancellor to grant a Rule 59(e) motion. Unfortunately, Florence did not address this issue in her brief. As a result, Brian and TBAAM argue that the failure to respond to this issue is “tantamount to confession of error.”[3] We do not consider Florence’s failure to respond as a confession of error,[4] and we address the merits of this issue.
¶ 37. The Mississippi Rules of Civil Procedure give the chancellor the benefit of both Rule 52(b) and 59(e). For this Court to accept Brian and TBAAM’s argument, we would have to ignore the language of Rule 52(b). This rule clearly states that the chancery court “may amend its findings or make additional findings and may amend the judgment accordingly.” Therefore, we find the chancellor was authorized under the rules and within his discretion to amend his findings and judgment. We find no merit to this issue.

C. Whether it was error to find Brian personally liable.

¶ 38. Brian argues that it was reversible error for the chancellor to hold him personally liable for Florence’s funds that Louis transferred into and out of TBAAM. Brian claims that the evidence was clear that although Louis gave him the title of executive director at age nineteen, his actual duties and responsibilities were operational and not financial. For instance, he was to run the camps, care for the campers, and maintain TBAAM’s facilities. *1137 Brian contends that Louis, as TBAAM’s chief financial officer, handled all of the finances and business. Also, Brian argues that it was Louis, and not Brian, who was granted Florence’s power of attorney. Finally, Brian claims that there was no evidence to support a conclusion that Brian was personally involved in Louis’s misdeeds.
¶ 39. In his oral ruling on December 20, 2011, the chancellor made the following findings about Brian:
Louis’s son, Brian, who currently serves as an elected member of the Mississippi Legislature, became executive director of TBAAM when he was 19 years of age. He is currently 34 years of age. Brian claims that he had no knowledge of his father’s activities, that although he loves his father, he has had many personality conflicts with him, that one simply didn’t say no to Louis without consequences. He claims that he was unaware of the source of funds for TBAAM or [Enterprises]. He further indicated that his father ran TBAAM until 2010. Brian further testified that although he was the executive director of TBAAM, he was unaware of some $35,000 in unpaid taxes covering three years of time, that he was unaware of thousands of dollars in overdraft fees, that he didn’t know what was on the charity’s website or even what was in the charity’s tax returns, which were simply put in front of him and he signed. Stated differently, although he was the executive director of this nonprofit corporation, all of this information was controlled by and known to Louis, while Brian was involved with the hands-on care of the campers. Brian did testify that a secretary could have gotten him the information if he had asked for it. He simply didn’t ask for it.
The chancellor also noted that Brian signed some TBAAM checks for his personal benefit. The chancellor then concluded that “[t]he court does not find that a fiduciary and confidential relationship ever existed between Florence and [Brian].”
¶40. In the written judgment, dated January 12, 2012, the chancellor found Louis, Janice, and TBAAM to be liable to Florence. Brian was not mentioned or found liable to Florence in the chancellor’s oral ruling or the written judgment.
¶ 41. In her post-trial motion, Florence asked the chancellor to impose liability on Brian. The chancellor then entered a final judgment that ruled Brian was not “jointly liable as to all of Florence’s funds ($453,-737.50) which passed through [Enterprises].” The chancellor found no evidence to support a finding that Brian held a position with Enterprises, which would support a finding of joint liability. However, the chancellor reversed his earlier decision on Brian’s personal liability and held “Brian breached his duty as an officer of [TBAAM] and is individually liable to Florence in the amount of $218,355.” The chancellor ruled:
The issue presented to the court by the present Motion essentially asserts that the court was manifestly in error in finding that these facts do not impose liability on Brian. The court agrees. The standard of conduct for a director or officer of a corporation is set out in [Mississippi Code Annotated section] 79-4-8.42 [ (Rev.2013),] which pro■vides[:]
(a) An officer, when performing in such capacity, shall act:
(1) In good faith;
(2) With the care that a person in a like position would reasonably exercise under similar circumstances; and
*1138 (3) In a manner the officer reasonably believes to be in the best interests of the corporation.
(b) In discharging those duties an officer, who does not have knowledge that makes reliance unwarranted, is entitled to rely on:
(1) The performance of properly delegated responsibilities by one of more employees of the corporation whom the officer reasonably believes to be reliable and competent in performing the responsibilities delegated; or
(2) Information, opinions, reports or statements, including financial statements and other financial data, prepared or presented by one or more employees of the corporation whom the officer reasonably believes to be reliable and competent in the matters presented or by legal counsel, public accountants, or other persons retained by the corporation as to matters involving skills or expertise the officer reasonably believes are matters (i) within the particular person’s professional or expert competence or (ii) as to which the particular person merits confidence.
Although Brian testified that he had easy access to [TBAAM]’s records, he elected to look the other way. In his words, “I just signed what was presented without any questions.”
Brian has been sued by Florence!,] who claims that his non-action casually related to her injury. In Turner v. Wilson, 620 So.2d 545, [548-49] (Miss.1993), the Mississippi Supreme Court quoted with approval the language of Corpus Juris Secundum (C.J.S.):
The liability of corporate directors to creditors and third persons is also addressed in 19 C.J.S. Corporations Sec. 544, p. 175 (1990) as follows:
A director, officer, or agent is liable for the torts of the corporation or of other directors, officers, or agents when, and only when, he has participated in the tortious act, or has authorized or directed it, or has acted in his own behalf, or has had any knowledge of, or given any consent to, the act or transaction, or has acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it. (Emphasis added) (Wilson, supra 548-549).
Brian breached his duty as an officer of [TBAAM], and is individually liable to Florence in the amount of $218,355. The Judgment shall be amended accordingly.
¶ 42. Thereafter, in the oral argument on Brian’s motion for a new trial, the chancellor explained his ruling further:
So the fact of the matter is, first, and, perhaps, most importantly, I want to say that my decision with respect to Brian Aldridge or [TBAAM] should in no way be viewed as requiring a charity to inquire into the source of its funds. I don’t really think that’s what this case is about.
When Florence Aldridge granted to her brother-in-law, Louis, a power of attorney, she acknowledged that she was temporarily incapable of making decisions for herself. She acknowledged that she couldn’t manage her own affairs, and that she trusted Louis Al-dridge. The fact that Louis Aldridge did not faithfully and honestly fulfill the role that was entrusted upon him is a family tragedy, and the [c]ourt has found him legally responsible for his actions.
*1139 While the responsibility between Louis Aldridge’s actions and the loss of Florence’s money, her resources, is direct, the line of responsibility that leads to TBAAM and Brian Aldridge is somewhat more circuitous. The decisions] to take Florence’s money were clearly those of Louis and not Brian. Many thousands of dollars were deposited into the TBAAM account, which is a charity where Brian was serving as the chief executive officer. While under Brian’s control as chief executive officer, many thousands of dollars were transferred from TBAAM, from the ministries, to a corporation which didn’t even exist, which had been dissolved by the State of Mississippi.
Essentially, the only thing that a corporation that has been administratively dissolved can do is to wind up its business. That corporation that is supposed to be to be winding up its business isn’t supposed to be paying for honeymoons or clothing bills for the president of the charity who largely and exclusively funded the corporation that’s being dissolved.
Moreover, Florence was not just a charitable donor to TBAAM. She was Brian’s aunt. She was the sister-in-law of Brian’s father, Louis, who was essentially robbing her. Louis was the chief financial officer of the very corporation where Brian was charged with the management as its chief executive officer. Even if Brian may not have known the source of the funds that came to TBAAM, or that many thousands of dollars were being channeled by the charity he was the president of to a dissolved corporation from which he benefitted, even if he didn’t know that, he should have known it.
Please note that this [cjourt has imposed liability on Brian only to the extent that funds, over $200,000[,j were laundered through TBAAM-or that came to TBAAM, the ministries, the charity.
The bottom line in all of this is that Florence Aldridge’s funds have been depleted, over a half a million dollars. Louis and his wife have filed bankruptcy. Brian Aldridge, as president of the charity, does not accept responsibility on behalf of the charity or his corporate role in impoverishing his aunt.
Sadly, the laudable work of TBAAM will almost certainly suffer. Behaviors that could have been examples of family care and unity are instead examples of selfishness and neglect of duty.
Accordingly, the ruling of the [cjourt is the motion for a new trial is overruled.
¶ 43. We note that the chancellor did not find that Brian actively participated in the wrongful taking of Florence’s money. There is no factual finding that Brian was aware of the source of the funds, or that he was involved as an active participant in this wrongdoing. The chancellor gave us two citations to legal authority to support his decision.
¶ 44. First, the chancellor cited section 79-4-8.42(a) and (b). The chancellor did not cite Mississippi Code Annotated section 79-4-8.42(c) (Rev.2013), which provides:
An officer shall not be liable to the corporation or its shareholders for any decision to take or not to take action, or any failure to take any action, as an officer, if the duties of the office are performed in compliance with this section. Whether an officer who does not comply with this section shall have liability will depend in such instance on applicable law, including those principles of Section 79-4-8.31 that have relevance.
We note that neither party has cited a case for the proposition that section 79-4-8.42 *1140 may be the basis for liability of a corporate officer to a third party that is not the corporation or a shareholder of the corporation. The language of section 79-4-8.42 cannot be the sole legal authority for the chancellor to hold Brian, as a corporate officer, liable to a third party for a tort committed by the corporation or another officer or director.
¶ 45. The chancellor also cited Turner, 620 So.2d at 548-49. Howard Wilson and Fred James were farmers who brought suit against six directors of South Central Mississippi Farmers, Inc. (“SCMF”). Id. at 546. They sought a judgment for the .wrongful conversion of their soybeans and were awarded $45,598.91 against George Turner and Robin Carter, two of SCMF’s directors. Id. Turner and Carter appealed. Id.
¶ 46. Wilson and James delivered their soybeans to SCMF. Id. SCMF’s manager accepted the soybeans. When Wilson and James told SCMF they were ready to sell their soybeans, they learned that SCMF’s manager had already sold their beans, and no money was left in SCMF’s accounts to pay Wilson and James. Id. at 546^7. There was no dispute that SCMF’s manager sold the soybeans and used the money to pay SCMF’s corporate debts. Id. at 547.
¶ 47. The court framed the issue presented on appeal as “whether corporate directors are personally liable when the corporate manager of an agricultural grain warehouse wrongfully converts the farmers’ grain and applies the proceeds to the debts of the insolvent corporation.” Id. at 546. The court held:
This case questions the liability of corporate directors to creditors of the corporation. As has been held in Wilson v. Stevens, 129 Ala. 630, 29 So. 678 (1901), “directors may be liable to stockholders for mismanagement of the business of the corporation or waste of its assets. Not so as to its creditors. A creditor must show actual fraud in order to hold directors hable.” Wilson, 29 So. at 679. Ordinary principles of agency apply to officers of a corporation and their liability to third persons. This state follows the rule that ah authorized agent for a disclosed principal cannot be liable for the acts of the agent’s corporate principal. Thames & Co. v. Eicher, 373 So.2d 1033 (Miss.1979).
Mississippi follows the general rule that individual liability of corporate officers or directors may not be predicated merely on their connection to the corporation but must have as their foundation individual wrongdoing. This Court observed in Mississippi Printing Co., Inc. v. Maris, West & Baker, Inc., 492 So.2d 977, 978 (Miss.1986) that “the general rule is well established that when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable.” See also Wilson v. South Cent. Mississippi Farmers, Inc., [494 So.2d 358, 361 (Miss.1986)] (“Any officer or agent of a corporation who actively participates in the commission of a tort conversion is personally liable to third persons injured thereby.”); First Mobile Home Corp. v. Little, 298 So.2d 676 (Miss.1974); Grapico Bottling Co. v. Ennis, 140 Miss. 502, 106 So. 97 (1925); Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 174 (5th Cir.1985) (“The thrust of the general rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity.”) Our sister state of Alabama also adheres to the general rule. Ex Parte Charles Bell *1141 Pontiac-Buick-Cadillac-GMC, Inc. v. Bell, et al., 496 So.2d 774, 775 (Ala.1986) (“The general rule is that officers or employees of a corporation are liable for torts in which they have personally participated.”)[.]
In Wilson, supra, this Court quoted with approval the applicable rule to be:
The rule that directors, officers, or agents of a corporation are liable for their torts to a person injured thereby ... is applicable where they are guilty of conversion. This is true even though they act in behalf of the corporation and although the corporation may also be liable, as where money or property of a third person is in the hands of the corporation and the officers in control knowinyly and intentionally convert it by refusing to give up possession, or by applyiny it to the uses of the corporation; and it is also true even though the directors, officers, or agents act in good faith, and do not personally benefit or profit from the conversion. All who are concerned or participate in the wrong are personally liable, (emphasis supplied)
19 C.J.S. Corporations § 849, p. 276.
The liability of corporate directors to creditors and third persons is also addressed in 19 C.J.S. Corporations § 544, p. 175 (1990) as follows:
A director, officer, or agent is liable for the torts of the corporation or of other directors, officers, or agents when, and only when, he has participated in the tortious act, or has authorized or directed it, or has acted in his own behalf, or has had any knowledge of, or given any consent to, the act or transaction, or has acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it.
What is required is some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff’s injury, (emphasis supplied)!.]
Turner, 620 So.2d at 548-49. The court then ruled that the instruction as to whether the directors were responsible for the manager’s actions if he acted within the scope of his duty was erroneous. Id. at 548. The court recognized that “a corporate officer or director is not, merely by reason of his corporate office, personally liable to creditors and third persons for the torts of other directors, officers, or managers. He is, on the other hand, personally liable for his own wrongful deeds.” Id. at 549.
¶ 48. The court then determined that the plaintiffs must prove their claim for conversion. Id. at 550. They had to prove “duty, breach of duty, proximate causation, and injury.” Id. The court determined that there was no evidence that “Turner and Carter breached any duty owed to the plaintiffs as creditors of the corporation, and none was presented in the jury instructions.” Id. The court concluded that there was not sufficient evidence to support a jury verdict against Turner and Carter. The court reversed the jury verdict. Id. at 551.
¶ 49. The rule in Turner, which is applicable here, might be restated to say that Brian, as an officer of TBAAM, may be liable to Florence for the torts of TBAAM, as an officer or agent, “when, and only when, he ... has had any knowledge of, or given any consent to, the act or transaction, or has acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it.” Id. at 548-49. This is the legal authority the chancellor relied on to enter a judgment against Brian.
*1142 ¶ 50. Indeed, based on this authority, we find that there was substantial evidence to support the chancellor’s decision. The chancellor did not find Brian actively participated in the tortious act, i.e., Louis’s taking of Florence’s money. Instead, the chancellor found Brian, as a corporate officer, was liable for the torts of the corporation to Florence, as a third party, because he had “acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it.” Id. Further, based on the evidence presented, we find that the chancellor’s decision was neither manifestly wrong nor clearly erroneous. Accordingly, we find no merit to this issue.

D. Whether Brian and TBAAM had a duty to investigate the source of contributions.

¶ 51. Finally, Brian and TBAAM argue that the chancellor was in error to rule that an officer of a nonprofit entity has an implied duty to investigate the source of contributions. They claim that the chancellor created new law in Mississippi. We disagree. Further, we find that the chancellor’s ruling does not place such a burden on charitable organizations.
¶ 52. The chancellor specifically found: “[F]irst, and, perhaps, most importantly, I want to say that my decision with respect to Brian Aldridge or [TBAAM] should in no way be viewed as requiring a charity to inquire into the source of its funds. I don’t really think that’s what this case is about.” The issue of liability in this case is unique because the parties are family members, who all benefitted from the use of funds flowing to TBAAM. Indeed, although it is not an issue in this appeal, Louis’s liability was based on his breach of fiduciary duty pursuant to the power of attorney. He used his position of trust for his personal benefit and for the personal benefit of an entity that he controlled. The chancellor recognized the close familial relationship of the parties involved. Florence was not a third-party charitable donor. She was Louis’s sister-in-law, and he held a fiduciary relationship with her. Brian was Florence’s nephew. He was aware of Florence’s condition, and through his position as a corporate officer of TBAAM, he could not plead ignorance.
¶ 53. The chancellor clearly made no finding that charitable organizations are responsible for investigating the source of their contributions. Rather, the chancellor held that, at the least, Brian should have become suspicious of the source of funds to TBAAM when “many thousands of dollars were being channeled by the charity he was the president of to a dissolved corporation from which he benefitted.... ” We find this issue is without merit.

II. Issues Presented in Florence’s Cross-Appeal

¶ 54. In her cross-appeal, Florence states the issues as follows:
A. Whether or not the [chancellor] erred in limiting [his] judgment in favor of Florence against [TBAAM] to $218,455.00 and in not awarding Florence punitive damages.
B. Whether or not the [chancellor] erred in limiting [his] judgment in favor of Florence against Brian Al-dridge to $218,355.00 and in not awarding Florence punitive damages.
¶ 55. In this section, we restate the issues based on the subject matter of the argument, not the identity of the parties.

A. Whether the award of damages was insufficient.

¶ 56. Florence states that the chancellor’s damage awards were insufficient. *1143 She claims that the judgment against TBAAM should have been for $541,162.99, and the judgment against Brian should have been for $513,256.57.
¶ 57. To support her argument, Florence cites Reeves v. Meridian Southern Railway, LLC, 61 So.3d 964, 967 (¶¶ 10-11) (Miss.Ct.App.2011), for the proposition that “[t]he tort of ‘conversion’ is an intentional exercise of dominion and control over personal property or a chattel, that so seriously interferes with the right of another to control that property that the tortfeasor may justly be required to pay the other the full value of the property.’ ” (citing 18 Am.Jur.2d Conversion § 1 (2004)). Florence is correct. The supreme court has also held that “[i]t is well-understood that in an action seeking damages, the plaintiff bears the burden of proof as to the amount of damages.” J.K. v. R.K, 30 So.3d 290, 299 (¶ 34) (Miss.2009) (citing Puckett Mach. Co. v. Edwards, 641 So.2d 29, 36 (Miss.1994)). “[D]amages ... must be proven to a reasonable certainty and must not place the injured party in a better position than [he] otherwise would have been in.” Polk v. Sexton, 613 So.2d 841, 845 (Miss.1993).
¶ 58. Our review begins with the judgments rendered by the chancellor. In the January 12, 2012 judgment, the chancellor awarded Florence a judgment against Louis and Janice for $552,000 and against TBAAM for $140,100. In the May 23, 2012 judgment, the chancellor increased the judgment against TBAAM to $218,455 and entered a judgment against Brian for $218,355.

1. Judgment Against Louis and Janice

¶ 59. Although it is not challenged in this appeal, the record reveals how the chancellor arrived at the $552,000 judgment against Louis and Janice. There were several exhibits offered in evidence that summarize how Louis disbursed or spent Florence’s funds. For example, Exhibit 15 summarized the total amounts of Florence’s funds disbursed and identified the initial payee, as follows:
Janice Aldridge $5,640.00
Brian Aldridge 1,500.00
Louis Aldridge • 22,266.42
TBAAM 140,100.00
Enterprises 371,656.57
Unidentified Recipients 11,050.00
Total $552,212.99
The chancellor apparently decided to round this amount to $552,000 for the judgment against Louis and Janice. This award appears to be based on the total amount of money Louis caused to be disbursed from Florence’s accounts. Neither Louis nor Janice appealed this judgment. We mention it only in context of the entire judgment.

2. Judgment Against TBAAM

¶ 60. Florence has appealed the $218,455 judgment against TBAAM. The chancellor determined that Florence had proven that TBAAM had taken or benefit-ted from Florence’s money in the amount of $218,455.
¶ 61. Florence explains how the chancellor arrived at the sum of $218,455. Louis deposited checks, written on Florence’s accounts, that totaled $140,100 in TBAAM’s bank accounts. Louis also deposited checks that totaled $371,656.57 in Enterprises’ accounts; and Enterprises transferred $78,355 of Florence’s funds to TBAAM’s accounts. Thus, Florence claimed that TBAAM converted $218,455 ($140,100 + $78,355) of Florence’s funds.
¶ 62. Florence then explains why she claims the $218,455 judgment is insufficient based on the evidence presented. We discuss these in several categories.
A. Checks from TBAAM to Brian. Florence claims that Brian, as an officer of TBAAM, transferred $10,990 of Florence’s funds from TBAAM accounts directly to Brian, or TBAAM paid Brian’s personal expenses.
*1144 B. Cash. The sum of $21,021.12 in checks from TBAAM was made payable to “Cash” or the checks were cashed at a local store.
C. Overdraft fees. TBAAM incurred overdraft charges of $30,133.50 in its bank accounts.
D. TBAAM’s Corporate Status. Florence argues that “TBAAM was not in good standing with the Mississippi Secretary of State’s Office. Its website made false representations.”
E. Tax Liens. Florence claims that the Internal Revenue Service recorded three federal tax-lien notices for unpaid federal taxes of TBAAM, for over $35,000 for the tax years 2003, 2004, 2005, and 2006. The tax liens remained unsatisfied.
F. Enterprises’ Corporate Status. Enterprises was administratively dissolved on December 28, 2004. Business was conducted in Enterprises’ corporate name by Brian, Louis, Janice, and TBAAM, even though it was not a valid entity. TBAAM transferred the sum of $82,080.93 to Enterprises; Enterprises, in turn, transferred $98,805 to TBAAM. The sum of $140,100 of Florence’s funds was deposited directly into TBAAM’s account, and $371,656.57 was deposited into accounts maintained by Brian, Louis, Janice, and TBAAM under the name of Enterprises.
G. Enterprises acted as the alter ego of TBAAM.
¶ 63. Florence then explains:
At the very least judgment should be imposed against TBAAM in the amount of $511,756.57[,] being the total of Florence’s funds deposited directly into the seven bank accounts of TBAAM and Enterprises. Under the civil conspiracy theory TBAAM is liable to Florence for the entire $552,000.00 of funds converted from her. The lower court did not err in awarding Florence the judgment against TBAAM in the amount of $218,355.00. With all due respect, its error was that the judgment amount was insufficient,.-
Then, in her reply brief, Florence claims that “[t]he aforestated unlawful shenanigans were deliberately and fraudulently conducted through the direct participation and involvement of TBAAM’s officers and agents[J resulting in $541,162.99 of funds being unlawfully stolen and converted from Florence for which she 'should be awarded judgment.” Thus, Florence claims that the amount of the judgment for damages against TBAAM should be either $511,756.57 or $541,162.99.
¶ 64. Florence may argue that the amount of damages awarded is insufficient, but she has not cited any legal authority that would require this Court to find that the chancellor’s findings were not based on substantial evidence or were clearly erroneous or manifestly wrong. “Failure to cite to relevant authority results in a waiver of the issue on appeal.” Bennett v. State, 933 So.2d 930, 953 (¶ 86) (Miss.2006). Therefore, we find that Florence waived this issue on appeal.
¶ 65. Further, we are aware of no authority that requires the chancellor, as the finder of fact, to provide a specific itemization of damages or an in-depth explanation as to how he arrived at the amount of damages. Certainly, Florence could have asked for either of these in her Rule 52(b) motion.

3. Judgment Against Brian

¶ 66. Florence has appealed the $218,355 judgment against Brian. The chancellor determined that Florence had proven that Brian had taken or benefitted from Florence’s money in the amount of $218,355. Florence contends that this amount is insufficient.
¶ 67. As discussed above, Florence may argue that the amount of dam *1145 ages awarded is insufficient, but she has not cited any legal authority that would require this Court to find that the chancellor’s findings were not based on substantial evidence or were clearly erroneous or manifestly wrong. “Failure to cite to relevant authority results in a waiver of the issue on appeal.” Bennett, 933 So.2d at 953 (¶ 86). Therefore, we find that Florence waived this issue on appeal.

B. Whether punitive damages were warranted.

¶ 68. As against TBAAM, Florence’s principal brief makes the following argument for punitive damages:
Further, this matter should be remanded back to the lower court for assessment of punitive damages against TBAAM in favor of Florence in that by clear and convincing evidence TBAAM acted with actual malice and committed actual fraud. [Miss.Code Ann. § 11 — 1— 65 (Supp.2013) ].
Then, in the section arguing against Brian, Florence says:
Further, this matter should be remanded back to the lower court for assessment of punitive damages against TBAAM in favor of Florence in that by clear and convincing evidence TBAAM acted with actual malice and committed actual fraud. [Miss.Code Ann. § 11 — 1— 65 (Supp.2013) ].
¶ 69. We recognize that Florence’s argument, as to punitive damages, cites no case authority, no facts in the record, and does not even attempt to change the names in the portion of the brief that asked for punitive damages from Brian. Florence makes this same argument in her reply brief.
¶ 70. This Court expects the brief to include an argument. An “argument” is defined in Mississippi Rule of Appellate Procedure 28(a)(6), which requires “the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.” While the statement made in Florence’s brief may be considered to be a “summary of the argument,”[5] it is simply not a sufficient argument that will merit our review. “Failure to cite to relevant authority results in a waiver of the issue on appeal.” Bennett, 933 So.2d at 953 (¶ 86). Therefore, we find that Florence waived this issue on appeal.
¶ 71. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.

. The date of this meeting is disputed. Brian and TBAAM argue the correct date is July 21, 2007, as Florence stated in her deposition. Florence asserts the correct date is July 21, 2008, which is consistent with her trial testimony. Because the July 21, 2008 date was not challenged at trial and the deposition testimony was not introduced to impeach Florence's recollection of the date, we must accept July 21, 2008, as the date of the meeting. Although not clearly stated, this appears to be the date accepted by the chancellor.

. Enterprises was created as a for-profit corporation. Enterprises was established by Louis and Janice several years after they formed TBAAM. The intent of Enterprises was to cater wedding receptions or other events and donate the profits to TBAAM. Enterprises was dissolved on December 28, 2004. Yet Louis continued to hold multiple bank accounts in the name of Enterprises. Louis, Janice, and Brian each signed checks from Enterprises’ accounts after it was dissolved.

. Dethlefs v. Beau Maison Dev. Corp., 458 So.2d 714, 717 (Miss.1984) (citing State v. Maples, 402 So.2d 350 (Miss.1981)). Brian and TBAAM also claim that the appellee’s failure to respond to the arguments of the appellant constitutes either a concession or “an implicit acknowledgment of the correctness of the [ajppellant's position.” See United States v. Wilson, 364 F.3d 353, 364 (5th Cir.2003); see also In re Incident Aboard the D/B Ocean King, 758 F.2d 1063, 1071 (5th Cir.1985).

. In Sullivan v. Sullivan, 942 So.2d 305, 307 (¶ 7) (Miss.Ct.App.2006), this Court held:
As [the appellee] did not file a brief in this matter, we have two options before us. The first is to take [the appellee]’s failure to file a brief as a confession of error and reverse, which should be done when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. The second is to disregard [the appellee]’s error and affirm, which should be used when the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed. As the former option is not applicable due to the size of the record and the quality of [the appellant's brief, we can safely affirm the chancellor for the following reasons.
(Internal citations and quotation marks omitted). Here, there is a sound and unmistakable basis upon which the judgment may be safely affirmed.

. "The summary, suitably paragraphed, should be a succinct, but accurate and clear, condensation of the argument actually made in the body of the brief.” M.R.A.P. 28(a)(5).